[No. 9830.   Department One.   January 10, 1912.]

WESTERN LUMBER & POLE COMPANY, *Appellant*, v.
A. B. JOSLYN *et al.*, *Respondents.*[1]

PARTNERSHIP—DISSOLUTION—RETIREMENT AND RELEASE OF PART-
NER—EVIDENCE—SUFFICIENCY.   Where partners had contracted in
writing for the cutting of timber owned by them, a release of one
of the partners is not shown by evidence that some months later he
sold his interest in the subject-matter to his copartner, gave notice
thereof and that the partnership was dissolved, and that the other
party to the contract continued the work, looking for his pay to the
other partner, against whom he carried the account on his books,
where it appears that the account happened to be so carried because
payments of checks were made by such partner, and where no release
was given or talked about.

ESTOPPEL—MISTAKE—PREJUDICE.   Upon an issue as to the release
of one partner from liability on a partnership contract, the fact that
both parties to the contract took it for granted that the withdrawal
and assignment of one partner *ipso facto* worked a release, does not
amount to a release by way of estoppel, where the performance of
the contract was continued the same as before and nothing was done
to mislead the retiring partner to his disadvantage.

Appeal from a judgment of the superior court for Spo-
kane county, Holcomb, J., entered February 25, 1911, upon
findings in favor of the defendants, in an action upon ac-
count.   Reversed.

*Davis & Rhodes*, for appellant.

*Nuzum & Nuzum* and *Geo. H. Armitage*, for respondent
Joslyn.

GOSE, J.—This is a suit to recover a balance due upon an
assigned account.   From a judgment in favor of the de-
fendant Joslyn, the plaintiff has appealed.

The facts are that, on June 30, 1906, the appellant's
assignor, one J. C. English, entered into a written con-
tract with the respondents Joslyn and Kinney, whereby he

[1]Reported in 120 Pac. 69.

agreed to cut, haul, and deliver, in cars on the Kootenai
Valley railroad, on or before July 1, 1907, "all the cedar
poles and piles" on the land specifically described in the
contract, at the prices therein fixed; that the respondent
Joslyn signed the contract on behalf of the respondents as
"Joslyn & Kinney;" that English performed the contract
on his part; that there is a balance due thereon amounting
to $1,175.88; that the respondents, at the time the contract
was executed, were the owners of the timber which was the
subject of the contract, and that on November 22, 1906, the
respondent Joslyn sold his interest in the timber to his co-
respondent, and advised English of that fact. It further
appears that English carried the account in his books against
Kinney only; that he made no demand upon Joslyn for pay-
ment until about the time the action was commenced, and
that he testified that he always looked to Kinney for pay-
ment.

The court found that, at the time of the sale of Joslyn's
interest in the subject-matter of the contract to Kinney, the
partnership existing between Joslyn and Kinney was dis-.
solved, and that English thereafter "continued to work for
said Kinney, looking to said Kinney alone for pay, and un-
derstanding that he, the said English, was to look to said
W. R. Kinney for his pay, and not to A. B. Joslyn." The
court further found that there was nothing due to English
at the time of the assignment from Joslyn to Kinney. The
conclusion of law deduced from the facts found is that there
is no liability upon the part of respondent Joslyn.

We do not think the evidence warrants the finding or con-
clusion that Joslyn was released from liability. It is not
contended that there was any express release of Joslyn.
Joslyn's testimony upon that subject is as follows:

"Q. But Mr. English never gave you any release from
this obligation on your contract? A. I don't think Mr.
English ever understood that he had any contract with me.
Q. I am asking you if he ever gave you any written release?

A. No, sir.  Q. Did you ever talk with him about any release? A. I did not, because I didn't consider I was a partner of Kinney in any way whatever. Q. So you and English never talked about any release of your obligations on that contract that you had signed with him? A. No, sir. Q. And you say, Mr. Joslyn, that you never had any talk with Mr. Kinney asking him to conduct the business in the year 1906, the business of Joslyn and Kinney, in his own name? A. No, sir. . . . Q. How did you happen to talk to Mr. English and tell him that you had sold out? A. Well, I presume the same as any one else would tell that they had sold out; not for any particular reason. The same as I told Mr. French or any other man."

The only evidence tending to show a release of Joslyn is, (1) that the account was carried in the books against Kinney only, and (2) that English testified that he looked to Kinney for his pay. The first circumstance has little weight, because the contract was carried against Kinney only, both before and after Joslyn sold his interest to Kinney. English explains why he carried the account in this way, as follows: "All of the checks that were issued to me were issued by W. R. Kinney. Therefore, I just made the account W. R. Kinney." Nor does the testimony of English that he looked to Kinney for his pay show a release of Joslyn.

Counsel for the respondent Joslyn thus state their position: "Abandonment of a contract need not be by formal release or cancellation, but may be shown by conduct of the parties." It is true that a waiver, a rescission, or an abandonment of a contract may be shown either by direct or circumstantial evidence, or by both, and it is likewise true that a party may by his conduct estop himself from asserting a right arising from contract, whether written or oral. The evidence, however, does not show that the appellant's assignor lost his right to enforce payment against Joslyn by any of these methods. Joslyn seems to have assumed that the sale of his interest in the subject-matter of the contract *ipso facto*

absolved him from liability to English. It may also be inferred from the evidence that English entertained the same view. This, however, was an erroneous deduction. It is elementary that, when there is no element of estoppel, it requires a meeting of minds to make or to terminate a contract. After the assignment from Joslyn to Kinney, English continued in the performance of the contract just as he had done before the assignment. He did nothing and he said nothing thereafter which could have misled Joslyn to his prejudice. The mere fact that he may have entertained a wrong view of the law does not release Joslyn, or estop English or his assignee from claiming recompense under the terms of the written contract. These views are supported by the following authorities: *Stetson & Post Mill Co. v. McDonald*, 5 Wash. 496, 32 Pac. 108; *Holden v. McFaul*, 21 Mo. 215; *Dean v. McFaul*, 23 Mo. 76.

The judgment is reversed, with directions to enter a judgment against the respondent for $1,175.88, with legal interest from the time of the completion of the contract.

DUNBAR, C. J., FULLERTON, MOUNT, and PARKER, JJ., concur.