[No. 11078.    Department Two.    May 24, 1913.]

THOMAS DEW, *Appellant*, v. J. C. PEARSON *et al.*,
*Respondents.*[1]

PARTIES—CAPACITY TO SUE—PARTNERS—BREACH OF CONTRACT.    A
complaint for damages for breach of a contract made by a partner-
ship, brought by only one member of the firm, is not demurrable for
"want of capacity to sue," where such partner was under no legal
disability; since he could sue in his own right, if the other party
was estopped to deny that he had taken over the contract, or if his
partners in the contract refused to join as plaintiffs.

PARTNERSHIP—ACTIONS—DEFECT OF PARTIES PLAINTIFF—ACTION ON
CONTRACT—EFFECT OF DISSOLUTION.    A complaint for damages for
breach of a contract made by a partnership, brought by only one
member of the firm, is demurrable for defect of parties plaintiff,
where it did not allege a transfer of the contract to him, or an as-
sent to its assumption by him individually, nor notice that he was
undertaking its performance individually, but merely alleged that
the other partners had notified defendant that they had withdrawn
from the partnership; since a dissolution does not relieve partners
from existing obligations and no substitution was alleged.

LOGS AND LOGGING—CONTRACT FOR SALE AND REMOVAL—CONSTRUC-
TION—PERFORMANCE OR BREACH.    A contract for the sale of timber
providing that the balance due, $4,700, shall be paid on or before the
expiration of six months, is not to be construed as giving a longer
time, nor as waiving the owner's right to claim a lien on timber cut
after the expiration of six months and default in payment, by reason
of a further provision in the contract that payments were to be made
as follows, $4, stumpage per thousand feet as removed until the debt
of $4,700 and interest is fully paid, with the right to cut and remove
timber not to extend beyond eighteen months, and with the right
to use waterways not to extend beyond thirty months.

Appeal from a judgment of the superior court for Che-
halis county, Irwin, J., entered August 24, 1912, dismissing
an action for damages for breach of contract, upon sus-
taining a demurrer to the complaint.    Affirmed.

*Frank Beam*, for appellant.

*Boner & Boner*, for respondents.

[1]Reported in 132 Pac. 412.

ELLIS, J.—The plaintiff, Thomas Dew, prosecutes this appeal from a judgment dismissing his action upon his election to stand upon his complaint, a demurrer thereto having been sustained. We will designate the parties throughout as plaintiff and defendants. The complaint alleged the sale by the defendants, as parties of the first part, to a copartnership consisting of the plaintiff and two others, as parties of the second part, of the timber on certain land in Chehalis county owned by the defendants, together with a right to use for floatage purposes the waters of the Neuskah river flowing through this and other land of the defendants, under a contract a copy of which was attached to and made a part of the complaint. The contract was dated November 22, 1910, and contained the following provisions:

"First, the purchase price for said timber and water right is five thousand ($5,000) dollars, of which the sum of three hundred ($300) dollars, has this day been paid as earnest, the receipt whereof is hereby acknowledged by the said parties of the first part:—and the further sum of four thousand seven hundred ($4,700) to be paid on or before six months from the date hereof with interest thereon from this date until paid at the rate of six per cent (6%) per annum payments to be made as follows, to wit: four dollars stumpage per thousand feet for all timber cut and removed off of aforesaid land or otherwise, by said parties of the second part or their assigns until the said debt of $4,700 with interest, is fully paid; in case the said four dollars stumpage is paid in time checks by the purchaser or purchasers of said logs or timber, the parties of the second part agree to stand the discount, if any is exacted by the bank upon which the check is drawn before credit is given in payment of the aforesaid debt.

"Second: The second parties agree to commence operation at once in cutting and removing timber sold off of said land and continue the same until all the timber they desire to take has been removed which time for removing the same shall not extend beyond eighteen months from date hereof.

"Third: The water right herein granted by first parties to second parties shall only be used by second parties to float logs and timber in said river over, through and across

the aforesaid described land and the second parties agree not to dam or splash said Neuskah river so as to cause the water to raise and overflow its banks and flood the bottoms or upland of said river and it is agreed by the parties hereto that said water right shall not extend beyond thirty months from date hereof, and the land lying south of said river is hereby granted to second parties to build logging road to get the said timber out to said river.

"Fourth: The payment for the consideration price herein mentioned is the essence of this contract and in case of failure of said parties of the second part to make the payment for stumpage or perform any of the covenants on their part this contract shall be forfeited at the election of the said parties of the first part and they shall have the right to reenter and take possession of said land and premises and every part thereof.

Fifth: This contract or agreement shall not be assigned, transferred or sold without the written consent of the parties of the first part being first obtained."

It is alleged that the defendants represented that there were on the land at least 1,500,000 feet of merchantable timber; that the plaintiff and his partners began work and continued to cut and remove the timber until about the middle of April, 1911, at which time they had cut about 175,000 feet of logs, the greater part of which was in the river, when his partners became dissatisfied, abandoned the work and withdrew from the partnership with the plaintiff's consent and with notice to the defendants; that the plaintiff, without objection from the defendants, continued to cut and get out logs under the contract until about May 20, 1911; that on or about May 16, 1911, and while no payments were due under the terms of the contract, the defendants, electing to violate the terms of the contract, filed with the auditor of Chehalis county a claim of lien for the sum of $4,201.51, as being the original balance due under the terms of the contract, and about the same time served notice upon the plaintiff to cease trespassing upon, and to cease removing logs from the land, and to cease removing any logs

cut from the lands of the defendants wherever they might be; that thereupon the plaintiff was compelled to cease logging under the contract; that thereafter, on the 24th day of May, 1911, the defendants filed another claim of lien for the sum of $4,201.51, alleged to be due and owing under the terms of the contract; that according to the terms of the contract, the plaintiff promised and agreed to pay the sum of $4 a thousand stumpage on sale of logs taken from the land; that the defendants had received as stumpage from the sale of logs the sum of $498.49, and that plaintiff was at all times willing to pay such stumpage for sale of any logs taken from the land. The complaint then alleged in substance that had the plaintiff been permitted to continue work under the contract he could have realized a profit of $3.50 a thousand over and above the stumpage and cost of cutting and removing the logs; that the plaintiff had cut and removed from the body of the timber about 200,000 feet, leaving about 1,300,000 feet of timber covered by the contract; that the plaintiff has always been and is now willing and able to perform the contract; that the time of performance has not elapsed; that the defendants have violated the contract by preventing performance by the plaintiff to his damage in the sum of $4,550. Other additional damages, which it is not necessary to enumerate, were alleged, making a total alleged damage of $4,900, for which judgment was prayed.

The defendants contend that the demurrer was properly sustained upon each of the following grounds: (1) Lack of capacity in the plaintiff to sue. (2) Defect of parties plaintiff and defendant. (3) Failure of the complaint to state facts sufficient to constitute a cause of action. We will consider these in their order.

(1) On any theory of the cause, the plaintiff had capacity to sue. He was under no legal disability. The argument advanced goes rather to a defect of parties. If the contract was taken over by him under circumstances estopping the

defendants to deny that fact, he could sue in his own right. If he was acting under the contract as representing the partnership, he still had the capacity to sue in his own name by making the partners defendants, and alleging that they refused to join as plaintiffs.

(2) The complaint did not allege a transfer of the contract to the plaintiff or an assent of the defendants to an assumption of it by him individually, nor did it allege notice to the defendants that he was undertaking to perform it in an individual capacity. It only alleged that the plaintiff's partners had notified the defendants that they had withdrawn from the partnership, and that the plaintiff continued to get out logs under the original contract. This was an inferential allegation that he was acting in performance of the still subsisting obligation of the partnership. It is a general rule of law, wanting provisions in the contract to the contrary, that a partnership and all of its members continue bound upon its contracts not performed even after dissolution, and that one partner has power to proceed with the performance of such contract for the firm. Burdick, Partnership, p. 238; 2 Bates, Partnership, § 709; 22 Am. & Eng. Ency. Law (2d ed.), p. 211. In view of this rule, and in the absence of any allegation of an agreement of the defendants to take a substitution of the plaintiff individually as the other party to the contract, he could only perform the contract as for the partnership. 30 Cyc. 660, 661; *Western Lum. & Pole Co. v. Joslyn,* 66 Wash. 524, 120 Pac. 69; *Stetson & Post Mill Co. v. McDonald,* 5 Wash. 496, 32 Pac. 108. A dissolution does not ordinarily absolve the other party to the contract from his contractual obligation to the firm, there being no actual abandonment by all of the members of the firm. 30 Cyc. 661. It follows that the partners were necessary parties to the action for an alleged breach of contract, which was, so far as the complaint showed, still a subsisting contract of the partnership in its relation to

the defendants, whatever the agreement of the partners among themselves.

(3)    The respondents contend that, in any event, the complaint did not state a cause of action; that, under the contract, payment of $4,700 balance of the purchase price was to be made on or before six months from the date of the contract; that there was no allegation that it was so paid; that there was no waiver of the right of lien; and that the filing of the lien and notice to the plaintiff not to remove the logs thereafter constituted no breach of the contract on the defendants' part. This must depend upon a construction of the contract, the material parts of which are above set out.    The first provision is that the deferred payment of $4,700 with interest is to be paid "on or before six months from the date hereof;" then follows the provision, "payments to be made as follows, to wit, $4 stumpage per thousand feet,  .   .   .   until the said debt of $4,700 with interest is fully paid; in case the said $4 stumpage is paid in time checks by the purchaser or purchasers of said logs or timber, the parties of the second part agree to stand the discount, etc." The plaintiff contends that these provisions are in direct conflict, and that the last provision, in view of the next stipulation that the right to cut and remove the timber shall not extend beyond eighteen months from the date of the contract, must be construed as waiving the right to a lien during that eighteen months, even if the purchase price be not paid within six months as specifically stipulated.   The same argument, if sound, would also serve to establish the waiver of a lien for thirty months under the third provision that the right to use the water of the river shall not extend beyond thirty months from the date of the contract.   To so interpret the contract would be to ignore the first cardinal canon as to the construction of written instruments, that the intention must be determined by a consideration of the whole instrument rather than of any particular clause.   17 Am. & Eng. Ency. Law (2d ed.), p. 4.

Plaintiff's construction would lead to an absolute cancellation and rejection of the first provision, which is as definite and specific as words can make it, "$4,700 to be paid on or before six months from the date hereof." This cannot be done unless this provision is absolutely repugnant to the general intent of the contract.

"What may be considered another aspect of the rule that the instrument shall be considered as a whole is the requirement that every clause and even every word shall be given effect, if this is in any way possible, and no part will be rejected unless absolutely repugnant to the general intent. Consequently, such a general construction must, if possible, be adopted that every part will be in harmony therewith." 17 Am. & Eng. Ency. Law (2d ed.), p. 7.

The general intent to be gathered from the whole instrument was manifestly to provide absolutely for a full payment on or before the expiration of six months and to provide security for payment before the logs were finally removed and disposed of. The second provision for payment by stumpage which is found immediately following and in the same sentence with the provision for payment within six months was evidently intended not to abrogate this provision as to time, which is the only specific provision in the contract as to time of full payment, but merely to specify a mode and time of partial payment within that period. This construction harmonizes the two clauses of this sentence, gives a reasonable and useful office to each and does no actual violence to either. It specifies when partial payments must be made, namely, on sales of logs. By limiting this provision to the time before the expiration of the six months, we harmonize it with the provision for full payment "on or before six months." But for the provision for payment by stumpage, all of the timber might have been disposed of within six months without any payment other than the $300 earnest money. The defendants suspended their right of lien for the six months by extending credit for that time. The stumpage provision serves the manifestly reason-

able purpose of modifying the effect of that suspension by furnishing the defendants security against the removal of the timber without any payment during that period. That such was the real purpose of the provisions for payment by stumpage is further emphasized by the fourth paragraph of the contract providing for the forfeiture of the contract at the election of the defendants on failure of such payment. The two intervening paragraphs, relating to the time for cutting and removing logs and the time of use of the water, have no relation either to the time of payment or manner of payment. They only applied after payment in any event. The provision for payment by stumpage did not abrogate the definite stipulation for full payment on or before six months, nor operate as a waiver of the right of lien after that period. Full payment not having been made nor alleged, the defendants committed no breach of the contract by filing the lien, nor by giving the plaintiff notice at that time and a warning against eloignment. The complaint stated no breach of the contract, hence no cause of action. The demurrer was properly sustained on both the second and third grounds.

The judgment is affirmed.

CROW, C. J., FULLERTON, MAIN, and MORRIS, JJ., concur.