[No. 14798. Department One. October 14, 1918.]

JOHN H. ROCHE et al., Respondents, v. JOHN MADAR
et al., Appellants.[1]

ATTORNEY AND CLIENT (35, 44)—COMPENSATION—EMPLOYMENT—
EVIDENCE—SUFFICIENCY. A reinstatement or reemployment of at-
torneys is sufficiently shown by evidence of the attorneys to that
effect, corroborated by disinterested witnesses and the records, as
against the testimony alone of one of the parties.

SAME (38) — COMPENSATION — VALUE OF SERVICES. Services of
attorneys are not inconsequential and trivial, where pleadings were
filed, the causes extensively briefed, and defaults set aside, requiring
several trips to another state.

PLEADING (183)—VARIANCE—EXTENT IN ACTION ON CONTRACT. In
an action for services by attorneys under a complaint alleging the
employment and performance until wrongfully discharged, it is not
a fatal variance to prove the employment, a voluntary withdrawal,
and a subsequent reemployment and performance thereunder until
wrongfully discharged.

SPECIFIC PERFORMANCE (2)—MUTUALITY OF REMEDIES — EXECUTED
CONTRACT. Specific performance of a contract employing attorneys
agreeing to pay by transferring corporate stock cannot be denied
on the ground of want of mutuality of remedies, or right to specific
performance against the attorneys, where the contract had been
fully performed upon their part.

SAME (1)—EXISTENCE OF OTHER REMEDY. A contract employing
attorneys for a specific fee—a certain number of shares of corpo-
rate stock—may be specifically enforced, without relegating the
attorneys to their remedy in damages.

SAME (37) — PROCEEDINGS — TIME TO SUE AND LACHES. Laches,
short of the statute of limitations, will not bar an action for specific

[1]Reported in 175 Pac. 314; 180 Pac. —.

performance, in the absence of any special reason why a shorter period should be enforced.

HUSBAND AND WIFE (61)—COMMUNITY PROPERTY—CONTRACTS BY HUSBAND. Where shares of corporate stock were community property, they were the proper subject of contract by the husband, contracting on behalf of the community in the employment of attorneys.

CHADWICK, C. J., dissenting.

Appeal from a judgment of the superior court for Spokane county, Oswald, J., entered January 2, 1918, upon findings in favor of the plaintiffs, in an action on contract, tried to the court. Affirmed.

*Allen, Winston & Allen* and *B. B. Adams,* for appellants.

*F. C. Highsmith, John H. Roche,* and *F. W. Girand,* for respondents.

FULLERTON, J.—On September 13, 1911, the appellants employed the respondents, who are attorneys at law, to represent them and prosecute to a final determination certain actions then pending in the courts of the state of Idaho, in which the appellants were actual parties or parties in interest. The contract of employment was in writing and distinctly specified the services to be performed. As a consideration for the services, it was agreed that the appellants should turn over to the respondents, on the final determination of the actions, 125,000 shares of the capital stock of the corporation, and cause the shares to be transferred to the respondents on the books of the corporation. The respondents immediately entered upon the performance of the services and continued therein for a considerable time, when a difficulty arose between the respondent Roche and the appellant John Madar, causing Roche to write a letter declining to continue longer in the employment. This difficulty, according to the contention of the respondents and their witnesses, although dis-

puted by the other side, was afterwards adjusted, and Roche continued to perform services until both counsel were finally discharged by John Madar, acting on behalf of himself and the other appellants. The causes referred to in the written contract were conducted by other counsel and brought to a final determination.

The present action was brought by respondents to recover the stock and cause its transfer on the books of the corporation. The trial resulted in a judgment in favor of the respondents, and it is from this judgment that the present appeal is prosecuted.

The appellants first assign error upon the findings of fact. It is contended that there was no reemployment or reinstatement of the contract after Roche had announced his intention to withdraw from the employment. But without entering upon an extended review of the evidence, we think it convincing upon the question. The fact was not only testified to by both of the respondents, but they are corroborated by disinterested witnesses who testify to services performed by them in the causes after the letter of withdrawal was written. On the other side, the testimony is practically that of John Madar alone, and he is contradicted in certain particulars by certified copies of the records taken from the causes in the Idaho courts. Again, it is said in this connection that the services performed were inconsequential and trivial. But, to the contrary, we think the showing is that the services were consequential and valuable. Not only were pleadings prepared and filed and the causes extensively briefed, but, when the employment was entered upon, the appellants were in default in certain of the actions, which the respondents were able to have set aside, the work of so doing requiring several trips from the attorneys' place of residence in this state to the courts in Idaho, where the causes were pending.

The second contention is that there is a fatal variance between the pleadings and the proofs. In their complaint, the respondents alleged the contract of hire, their entering upon the duties of the employment, and their continuance therein until their wrongful discharge by the appellants. The proofs were, as has been indicated, a withdrawal by one of counsel, his subsequent reemployment under the same contract, and the subsequent wrongful discharge of both counsel. This, we are clear, is not a fatal variance, nor proof of a different contract from that alleged in the complaint. The terms of the contract remained the same. If there was at any time a severance of the original relation, there was also a resumption of that relation, and the rights and liabilities of the parties remained after the resumption as they were originally. It was competent, therefore, for the respondents to declare upon the original contract, and they are not to be nonsuited, conceding that their proofs show an intermediate break and renewal of the contract.

The case of *Baxter v. Billings*, 83 Fed. 790, cited and relied upon by the appellants, presents, in our opinion, an entirely different question. In that case a contract was made with two attorneys, for a stipulated compensation, to conduct certain litigation. Before the contract was completed, one of the attorneys died, and it was held that the other could not recover upon the contract. While we think the case sound, it does not present the question presented here. There the death of one of the attorneys put an end to the contract, and there was, and could be, no revival of the original contract. Of necessity there must be a new contract, either express or implied, and the court could well hold that any action to recover fees by the surviving attorney must be based upon the new contract. But here no such condition exists. It was competent for the

parties to reinstate the contract, and having done so, it was obligatory upon all the parties.

The third contention is that there is no mutuality of remedies. If we have correctly gathered the appellants' meaning, it is that, since in an action for specific performance they could not have compelled the respondents to perform the services agreed on their part to be performed, the respondents cannot, notwithstanding an actual performance on their part, enforce a specific delivery of the shares of stock. But as we understand the doctrine of mutuality of remedies, it applies only where the contract is executory, not to a contract which has been fully performed on one side and nothing remains to be done on the other but turn over the agreed compensation for the performance. This last is the situation here. The respondents have fully performed or, what is the same thing, performed all that was required or contemplated by their contract until it was breached by the other side. In other words, the compensation agreed upon has been earned, and the question is not, was there originally a lack of mutuality of remedy, but rather, can the appellants urge this original lack of mutuality as a defense to performance on their part, after the contract has been performed by the other party? We are clear they cannot.

The fourth contention is that the remedy of the respondents is one for money damages and not a specific performance of the agreement to deliver the shares of stock. It is a general rule, it is true, that contracts for the sale of personal property will not ordinarily be enforced specifically, and that the general rule is as applicable to the sale of shares of stock as it is to other forms of personal property. But it cannot be said that this is an ordinary contract for the sale of shares of stock. It was a specific fee agreed upon between liti-

gants and their attorneys. In this state it is expressly provided by statute, Rem. Code, § 474, that the "measure and mode of compensation of attorneys and counselors shall be left to the agreement, express or implied, of the parties . . ." and when a particular mode of compensation is agreed upon, we know of no reason why it may not be enforced, and why the attorney may not in any instance resort to that legal method necessary to its enforcement; provided, of course, the contract is fair and aboveboard, and not the result of fraud or inequity such as will avoid contracts made between attorneys and prospective clients generally.

The fifth contention is that the respondents were guilty of laches in instituting their action. But we cannot think this contention requires an extended discussion. That it was brought well within the period of the statute of limitations is not questioned, and this period will mark the limit of the right to maintain an action, unless some special reason is shown why a shorter period should be enforced. A diligent reading of this record fails to disclose any such special reason.

Lastly, it is contended that the shares of stock contracted to be delivered to the respondents were the separate property of the appellant Mary Madar, and thus not a subject of contract by John Madar for a community obligation. The trial court, however, found that the shares of stock were community property of the contractors, not the separate property of Mrs. Madar. With this finding we agree. Being community property, the shares were a proper subject of contract by John Madar when contracting on behalf of the community.

The judgment is affirmed.

MAIN, C. J., PARKER, MITCHELL, and HOLCOMB, JJ., concur.

## ON REHEARING.
### [En Banc.  May 28, 1919.]

Per Curiam.—Upon a rehearing *En Banc*, a majority of the court still adhere to the opinion heretofore filed herein, and for the reasons there stated, the judgment is affirmed.

Chadwick, C. J. (dissenting)—While we have not been inclined to apply the doctrine of laches within the period of statutory limitation, we have, in common with other courts, held that the doctrine is peculiarly applicable where mining property is involved.

"The doctrine has been applied in such cases because the character of the property or the manner of its transfer, and all the incidents attending its use and ownership, are circumstances to be considered." *Gray v. Reeves*, 69 Wash. 374, 125 Pac. 162.

It is because mining property is speculative in character and subject to sudden and violent fluctuations in value, and what may be worthless today may become of great worth through the faith and industry of one owner as against a lagging, noncontributing partner.

"Property worth thousands to-day is worth nothing to-morrow; and that which would to-day sell for a thousand dollars as its fair value, may, by the natural changes of a week or the energy and courage of desperate enterprise, in the same time be made to yield that much every day. The injustice, therefore, is obvious, of permitting one holding the right to assert an ownership in such property to voluntarily await the event, and then decide, when the danger which is over has been at the risk of another, to come in and share the profit." *Twin-Lick Oil Co. v. Marbury*, 91 U. S. 587, 592, 593.

See, also, 3 Lindley, Mines (3d ed.), § 782; 18 R. C. L., Title "Mines," § 149, pp. 1253, 1254.

Granting all that respondents claim, I cannot distinguish this case from *Patterson v. Hewitt,* 195 U. S. 309; *Johnston v. Standard Min. Co.,* 148 U. S. 360; *Waterman v. Banks,* 144 U. S. 394; *Steinbeck v. Bon Homme Mining Co.,* 152 Fed. 333; *Jackson v. Jackson,* 175 Fed. 710; *Cunningham v. Independence Consol. Min. Co.,* 58 Wash. 371, 108 Pac. 956; *Ferrell v. Lord,* 43 Wash. 667, 86 Pac. 1060; *Gamble v. Hanchett,* 34 Nev. 351, 432, 126 Pac. 111; *Great Western Min. Co. v. Woodmas of Alston Min. Co.,* 14 Colo. 90, 23 Pac. 908; *Graff v. Portland Town & Mineral Co.,* 12 Colo. App. 106, 54 Pac. 854; *Rogers v. Van Nortwick,* 87 Wis. 414, 58 N. W. 757, and the decision of this court in *Florence-Rae Copper Co. v. Iowa Mining Co.,* 105 Wash. (. . . .), 178 Pac. 462, which was decided after our opinion in the principal case was handed down. And with all due respect to the decision of the court, the cases I have cited are not distinguished, although we were invited to do so by counsel.

There are other grounds which, in my judgment, justify an overruling of our former opinion and a reversal of the case. They are not discussed in the opinion, and the court being disinclined to treat them as worthy of comment, it would avail nothing for me to discuss them. But if respondents are to recover, it would seem to be no more than just to compel a payment *pro tanto* on the cost of proving the mining claim, and because of which respondents now see fit to assert an interest in it. They have eaten their cake and have it, and of this can any man say more?