[No. 22779. Department One. April 30, 1931.]

PAUL AUVE et al., *Respondents*, v. R. D. WENZLAFF
et al., *Defendants*, P. A. GAUL et al.,
*Appellants.*[1]

[1]Reported in 298 Pac. 686.

*Grady & Velikanje,* for appellant Fredricks.

*John H. Lynch,* for appellant Gaul.

*LaBerge, Cheney & Hutcheson,* for respondents.

HOLCOMB, J.—In this cause, respondents sued to recover, from all the defendants named in the action, certain installments past due on a real estate contract. All of the installments were not due at the time of bringing suit. At trial, it was conceded by respondents that, inasmuch as respondents were attempting to enforce a written contract and for a decree to that effect, the case was one of equitable cognizance. That this was correct, is settled by our decisions in *Hogan v. Kyle,* 7 Wash. 595, 35 Pac. 399, 38 Am. St. 910, and *Anderson v. Wallace Lumber & Manufacturing Co.,* 30 Wash. 147, 70 Pac. 247; *McCutchen v. Brink,* 129 Wash. 103, 224 Pac. 605.

The contract, for the sale of real estate in Yakima county, was executed on April 28, 1926, by respondents as vendors, wherein they agreed to sell to Wenzlaff and wife, Gaul and wife, and Fredricks and wife, a ranch and certain personal property for a total purchase price of $6,000, of which $1,300 was paid at the time, and the balance of $4,700 was payable $1,200 on January 2, 1927, $500 on January 2, 1928, and $500 on January 2 of each year thereafter until the full amount had been paid. In addition to the original payment of $1,300, the vendees have made the following payments: $500 on October 11, 1926; $200 on February 15, 1927; $25 on April 16, 1927; $50 on November 6, 1927; $200 on December 22, 1927, and $500 on December 30, 1927. After the execution of the contract, the vendees went into possession of the property, but have failed to pay any further part of the purchase price since December 30, 1927, or to pay the taxes and water assessments according to the terms of the contract.

On April 4, 1927, appellants Gaul and wife assigned their interest by quitclaim deed to defendants Wenzlaff and appellants Fredricks, who orally assumed and agreed to pay all assessments, water charges, and taxes and all unpaid installments under the contract.

The contract is very lengthy and cannot, within proper limits of this opinion, be set out in full. It prohibits any assignment thereof without the written consent of respondents, or that any independent contract of sale or lease of the premises be entered into by the vendees with any third person without first having obtained the written consent of the vendors so to do, which written consent must be endorsed on or attached to the contract. The Gauls assigned their interest in the contract without having obtained the consent of the vendors. Subsequent to such assignment, respondent, the husband, approached Gaul and requested that payments be made, at which time Gaul told him that he had sold his interest to Wenzlaff and Fredricks, and that respondents would have to look to them for money.

In May, 1927, respondents asked Fredricks for money under the contract, and were told by Fredricks that he did not have any money; that he had no means with which to carry on his part of the transaction, and told respondents that, if satisfactory to them, he was negotiating to transfer his interest to Wenzlaff. Fredricks further said that he had no experience in farming, and that Wenzlaff was making arrangements to pay the respondents, upon which respondent, the husband, said "O. K.". On May 18, 1927, appellants Fredricks quitclaimed their interest to Wenzlaff, and there was an oral agreement between the parties that Wenzlaff would assume all payments and liabilities under the contract. Thereafter, Wenzlaff made certain payments to respondents.

In September, 1927, Wenzlaff, the husband, told respondents that he had a deal pending with one Schofield for the purchase of his interest in the contract. Wenzlaff further said that respondents would have to look to Schofield, who thereafter, through another, farmed the land in 1928. The Schofield assignment was made to Dorothy Schofield, a minor, who afterwards in this suit filed her verified answer disaffirming and repudiating the transfer. On about January 1, 1929, respondents, through their attorney, advised Gaul, Fredricks, and Wenzlaff that the payments were not being made under the contract, and made demand upon them for payment.

It is to be noted on the threshold of the discussion herein that there is no evidence of any formal or actual release by respondents of any of the original vendees from their contractual obligations.

Respondents included in their action appropriate allegations on the contract, and sued to recover, besides the installments of the purchase price due January 2, 1928, and January 2, 1929, water assessments and taxes, which all the defendants had failed to pay, and which respondents had paid for the protection of their security.

The court granted judgment in favor of respondents, as prayed, except that recovery of taxes was denied. Only the Gauls and the Fredricks have appealed from the decree, and respondents have cross-appealed from the denial of the recovery of taxes.

Appellants open their argument with the assertion that the trial court seemed to stress in its memorandum opinion that they had set up a defense of contractual release, whereas, on the contrary, their defense was one of waiver, acquiescence and estoppel *in pais*.

The discussion of appellants' contention is elaborate and intricate. They assert, first, that respondents

agreed to relieve them of all personal liability under the contract; and, second, that respondents are estopped, as to them, in pursuing any other remedy than a forfeiture of the contract.

It is obvious from the statement of the facts as to what occurred in connection with the transactions with the other parties, subsequent to the original parties to the contract of sale, that there never was any agreement made between respondents and any of the parties that respondents would relieve the original contract parties from their obligation. Respondents had the legal right to rely upon the written contract, but had, also, the right to permit other parties to become additionally liable, either to the vendees or to them, without impairing their own contract in writing. It cannot be assumed, because the original vendees brought in other parties to relieve them of their obligations, unless there was a meeting of the minds between them and respondents, that they, the original parties liable under a valid contract in writing, should be released and relieved of their obligations.

There is no question but that respondents consented to the respective assignments. But respondents were never the moving parties. When they would demand money from the parties originally liable, they would then be referred to some other subsequent party. Respondents always insisted that the payments be made as provided in the contract, and, of course, did not care who actually made the payments. Respondents' acquiescence in such assignments, unless they agreed to release the original parties, could not have the effect of nullifying the written contract.

In a very early case, *Wooding v. Crain*, 10 Wash. 35, 38 Pac. 756, this court said:

"The second proposition of appellant, that the respondent could escape his liability by assigning his

interest in the contract to a third party, cannot be sustained under any authority we know of. There is a vast difference between the rights of the assignee and the liability of the assignor under the original contract. The contracting party assumes certain obligations which the party with whom he has contracted has a right to enforce, and he certainly cannot escape these obligations by any assignment, and compel the original contractor to look to other parties than the parties with whom he contracts. . . . and it would be a strange and novel principle of law that would compel him to look to an irresponsible person for the performance of a contract, and for the damages for its breach, when he had taken the precaution to contract with a responsible person.''

Again, in *Western Lumber & Pole Co. v. Joslyn,* 66 Wash. 524, 120 Pac. 69, we said:

''It is elementary that, when there is no element of estoppel, it requires a meeting of minds to make or to terminate a contract.''

Compare *Medgard v. Shimogaki,* 135 Wash. 527, 238 Pac. 574; *DeLano v. Tennent,* 138 Wash. 39, 244 Pac. 273. See, also, 27 R. C. L. 563 and 5 C. J. 878, 879, 977.

After attentive consideration of the many cases and texts cited by appellants in their opening and reply briefs, we consider none of them fit the facts in this case.

■ The second contention of appellants is that their elements of estoppel *in pais,* shown in this case, precluded respondents from recovery.

The argument in support of this contention is somewhat vague and involved, but it seems chiefly to be rested upon silence, acquiescence, and laches.

As to silence and acquiescence on the part of respondents, as we have heretofore intimated, there was absolutely no duty on the part of respondents to speak. Appellants were not led into any worse situation by

any silence or acquiescence on the part of respondents. They were in no wise prejudiced.

" 'It is fundamental that a party relying upon an estoppel must show that he has been prejudiced by the act of the party whom he is seeking to estop. . . . There must, however, be some intended deception in the conduct or declarations, or such gross negligence as to amount to constructive fraud.' " *McFadden v. Allen-Nelson Mill Co.,* 150 Wash. 249, 272 Pac. 714.

In this case, as in that, there is not the slightest implication from the facts shown that there was any intended deception on the part of respondents.

As to laches, this cause having been instituted only about a year after the cause of action on the installments past due accrued, it is well within the statute of limitations. We have always held that, as to the defense of laches in equity, generally, we will be bound by the statute of limitations at law, unless some special reason is shown why a shorter period should be enforced. *Wooding v. Crain, supra; Roger v. Whitham,* 56 Wash. 190, 105 Pac. 628; 134 Am. St. 1105, 21 Ann. Cas. 272; *Conaway v. Co-operative Homebuilders,* 65 Wash. 39, 117 Pac. 716; *Hotchkin v. McNaught-Collins Improvement Co.,* 102 Wash. 161, 172 Pac. 864; *Roche v. Madar,* 104 Wash. 21, 175 Pac. 314, 181 Pac. 857; *State ex rel. Kubel v. Plummer,* 130 Wash. 135, 226 Pac. 273; *Johnson v. Schultz,* 137 Wash. 584, 243 Pac. 644.

We find no just reason for reversing the decree of the lower court on the principal appeal.

As to the cross-appeal of respondents, the trial court held that respondents could recover the installments of the purchase price unpaid, and the water assessments sued for, but held that, under the language of the contract, they could not recover the taxes.

A finding was made to the effect that each and all of the defendants in the action had failed to pay real

property taxes on the property due June 1, 1928, in the sum of $183.19, and also failed to pay real property taxes on the property due June 1, 1929, in the sum of $143.74, all of which respondents paid on June 25, 1929.

A finding was also made that on April 4, 1927, when appellants Gaul assigned their interest in the property to appellants Fredricks and defendants Wenzlaffs, at the time of the assignment and as a part of the consideration therefor, there was an oral agreement between all of them that Wenzlaffs and Fredricks would and did assume and agree to pay all assessments, water charges, and taxes levied or to be levied on the real estate described, and all contract payments and all liabilities and obligations under the contract. A like finding was made as to each of the subsequent assignments of the contract.

The contract, among other things relating to taxes and assessments, stipulates that it is "the strict agreement and a consideration hereof" that, during the life of the contract, taxes, water charges, and assessments of all kinds were to be secured annually by chattel mortgage, as well as the installment payments to become due annually, for security only; but that the giving of such chattel mortgage should not affect the rights of the vendors, their heirs, executors, administrators, or assigns, under any of the terms of the contract, in case of any default or neglect of the vendees, to fully and strictly perform the terms and provisions thereof. It was further agreed that the contract, in its every term, provision, and covenant, should be, and was, binding upon the parties thereto, and upon their respective heirs, executors, administrators, and assigns. There was a further provision for forfeiture of the contract in case of default and delinquency in the payment of any of the sums stipulated to be paid by any of the vendees, their heirs or assigns, respect-

ing installments of the purchase price, taxes or assessments, or water charges, as agreed.

The provision as to forfeiture was not exclusive, but respondents could waive the forfeiture and enforce the contract, as we have held. (*McCutchen v. Brink, supra; Kritzer v. Moffat,* 136 Wash. 410, 240 Pac. 355.) Having elected by this action to enforce the contract, and the parties subsequently assuming the original contract of the vendees who executed the same, being bound as the contract provides, as assignees, we can see no reason why they are not bound to pay the taxes as well as the water assessments. The trial court gave no specific reason for denying recovery of the taxes and, in this, we conclude that it erred.

For the reasons herein stated the judgment is affirmed upon the principal appeal, and reversed upon the cross-appeal. Judgment is ordered accordingly.

TOLMAN, C. J., MITCHELL, and PARKER, JJ., concur.