**GOERIG et al. v. CONTINENTAL CASUALTY CO.**

**GOERIG et al. v. CONTINENTAL CASUALTY CO. et al.**

**Nos. 11722–11726.**

Circuit Court of Appeals, Ninth Circuit.

May 5, 1948.

Brown & Hawkins, of Yakima, Wash., and Ferguson, Burdell & Armstrong, of Seattle, Wash., for appellants.

Skeel, McKelvy, Henke, Evenson & Uhlmann and Willard E. Skeel, all of Seattle, Wash., for appellee.

Before GARRECHT, DENMAN and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

These five appeals, each having identical issues, were briefed and argued together. Each suit was brought against the Continental Casualty Company, hereafter called Continental, under the Miller Act, 49 Stat. 793 et seq., 40 U.S.C. 270a, 270b, 40 U.S.C.A. §§ 270a, 270b, by the United States as use plaintiff for a subcontractor supplying labor or materials on government construction contracts made by a group of joint adventurers, of which the district court held appellants were members. In all, judgments were given against Continental on its bonds for the performance of the joint venture agreements. Continental cross-complained in each case and recovered judgments against the appellants for their agreements to indemnify Continental for liability on its bonds. Each appeal is from such a judgment on Continental's cross-complaint. One of the appeals, No. 11,723, is also from a judgment against appellants on the complaint of a subcontractor supplier for whom the United States was the use plaintiff.

Typical of the cases in which Continental recovered on its cross-complaint is No. 11,726. Three co-partners, Sam Macri, Don Macri and Joe Macri, hereafter called the Macris, on December 7, 1943, entered into a Miller Act contract, numbered 1062, for construction on a government project in the State of Washington. The Macris gave the United States a performance bond, dated December 7, 1943, which they had secured from Continental by their agreement with Continental that they would indemnify it against all liability "incurred by the company by reason *of executing* such bond." (Emphasis supplied.)

It is unquestioned that Continental became liable for the default of the Macris by reason of the execution of this and a similar succeeding bond.

Four days later, on December 11, 1943, the appellants entered into a joint venture or partnership agreement with the Macris to engage in the performance of contract 1062 and share in its profits and losses. Appellants specifically agreed that the bond of the previous December 7th was "to be treated as being executed and delivered in pursuance of this agreement of Joint Venture."

In the succeeding year, on May 18, 1944, the joint adventurers entered into a second agreement with the United States, No. 1068. A similar bond was procured from Continental with the same provisions respecting Continental's liability and their similar indemnifying agreement, and delivered to the government.

On July 15, 1944, appellants and the Macris entered into an agreement terminating the joint venture, appellants, however, agreeing to pay to the Macris 52⅓% of their losses sustained in the contracts with the United States, which included contracts 1062 and 1068.

Thereafter the subcontractor Walter Lumber Company delivered to the Macris, on both contracts, lumber for which they were not paid a balance of $3,021.91, for which the United States began the suit as use plaintiff for the Lumber Company against Continental. The district court, on the complaint against Continental and the Macris, entered judgment in favor of the Lumber Company for that amount and interest against it and the Macris. On Continental's cross-complaint the district court entered a similar judgment against the Macris and appellants.

Appellants contend they are not liable for their agreements to indemnify the Continental for its liability for this amount because a dormant partner cannot become liable on an indemnity agreement, though here it was necessary to carry on the business of the partnership.

We do not agree. Appellants cite no Washington case supporting this contention. The liability of the joint adventurers in the State of Washington is that of co-partners. Priestley v. Peterson, 19 Wash.2d 820, 145 P.2d 253, 264, where the Supreme Court of the State of Washington stated "It is the general rule that when parties become joint adventurers, the act of one will bind all, in so far as such act is within the general scope of the enterprise." That court then quoted with approval from 33 Corpus Juris, 871, § 99, as follows: "As to third persons who deal with a joint adventurer in good faith and without knowledge of any limitations upon his authority, the law presumes him to have been given power to bind his associates by such contracts as are reasonably necessary to carry on the business in which the joint adventurers are engaged, and they become liable upon such contracts notwithstanding they may have expressly agreed amongst themselves that they should not be liable. But he cannot bind his associates by contracts made outside of the scope of the business in which they are engaged, or by contracts made for his individual benefit." See, also, 48 C.J.S., Joint Adventures, § 14.

With regard to the liability of a dormant partner, in the early case of Pacific Drug Co. v. Hamilton, 71 Wash. 469, 128 P. 1069, 1070, (followed in O'Neill v. Dunning, 132 Wash. 138, 141, 231 P. 449) it is said to be "well settled" that "The rule that an undisclosed principal is liable for *contracts made,* or goods purchased, *or benefits secured for him by his agent,* applies to a case where there is an undisclosed or dormant partner." (Emphasis

supplied.) Here are dormant partners for whom contracts are "made" and which are "benefits secured" for appellants by their co-partners.

Appellants cite Southern Surety Co. v. Plott, 4 Cir., 28 F.2d 698, page 700. That case, however, which concerned a North Carolina partnership, considers no such provisions as those of the Washington law. It limits its decision by stating: "The rule of law applying in the case of an undisclosed principal or partner cannot apply here, even if applicable in the case of principal and surety, because in the complaint there is no allegation to support it."

None of the cases cited hold that an undisclosed principal, a party to an indemnity agreement, is free of liability on a breach of that agreement. It is true, as stated in the Southern Surety case, that if a party is informed "that the person with whom he is dealing is merely the agent for another, and prefers to deal with the agent personally on his own credit, he will not be allowed afterwards to charge the principal." Here Continental was not informed of the existence of the undisclosed principal and could not have preferred to deal solely with the Macris.

It is also true as appellants state that "the mere fact that a principal is jointly liable with others for the debt will not give a surety any right against such others, if they are not actual parties to the contract." Here, under the Washington law, the liability arises from the fact that the undisclosed principals are actual parties to the contracts and liable thereon. Pacific Drug Co. v. Hamilton, supra.

Appellants argue that the bonds were so drawn that the Continental became liable only for the non-performance of the two government contracts by the three Macris. Assuming, but not deciding, that this is true, it is a contract which promotes the joint enterprise. It well may be within the scope of the joint adventure that contracts are drawn which create unequal advantages or disadvantages to particular members, cf. State ex rel. Crane Co. of Minnesota v. Stokke, 65 S.D. 207, 272 N.W. 811, 110 A.L.R. 761. Appel-

lants as well may agree to indemnify Continental for its liability for the non-performance of appellants' associates in the joint adventure as for all five, including themselves.

Appellants also contend that though their agreements to indemnify for Continental's liability "by reason of executing such bond" were made during the joint venture, appellants are not liable for the defaults of the Macris which determined the amounts of liability under the bonds because they occurred after the dissolution of the co-partnership.

We do not agree. It should be noted that the Uniform Partnership Act was not passed in Washington until 1945, which was after the date of the termination of the joint venture. Sess.Laws 1945, c. 137, p. 349. It was then the law of Washington that

"* * * a partnership and all of its members continue bound upon its contracts not performed even after dissolution, and that one partner has power to proceed with the performance of such contract for the firm." Dew v. Pearson, 73 Wash. 602, 606, 132 P. 412, 414 (sale of logs by a partnership).

"One partner may not relieve himself of liability for past debts of the partnership merely by terminating the partnership." Hewitt Rubber Co. v. Thompson, 127 Wash. 363, 368, 220 P. 767, 769.

We can see no reason why under the Washington law a dormant partner, any more than any other partner, may escape liability by withdrawing from the partnership. The leading case of Pitkin v. Benfer, 1892, 50 Kan. 108, 31 P. 695, 34 Am.St.Rep. 110, clearly announced the rule that a dormant partner is liable on contracts of sale made before dissolution of the partnership and thereafter breached, but not upon such contracts made after dissolution.

Appellants rely on the cases of City of Seattle v. Erickson, 99 Wash. 543, 169 P. 985; Alaska Pacific S. S. Co. v. Sperry, Flour Co., 107 Wash. 545, 182 P. 634, 185 P. 583, and Town of Flagstaff v. Walsh, 9 Cir., 9 F.2d 590. These cases hold no more than that an indemnitor against lia-

934

bility of his principal for the indemnitor's acts is not liable where the indemnitor's acts do not cause the principal's liability. Here the appellants, as undisclosed principals, agreed to indemnify Continental for the defaults of the Macri partnership in performance of the government contracts—defaults which, it is admitted, did occur.

In case No. 11,723, appellants also appeal from a judgment against them in favor of Morrison, based on labor and material furnished by him to the Macris on their government work, pursuant to a sub-contract between the Macris and Morrison. The subcontract, the district court found, was entered into on April 21, 1944 —that is before the dissolution of the joint adventure. The use plaintiff's complaint alleges such a sub-contract, but the appellants' answer denies the allegation. Appellants' brief asserts that there is no evidence of the contract to sustain the finding. Morrison's brief says there is such evidence but fails to point it out in the record. Our examination of the record fails to discover such evidence. We hold that this judgment in favor of Morrison must be reversed.

The five appeals are affirmed as to the judgments in favor of Continental on its cross-complaints. In case No. 11,723 the judgment is reversed as to appellants on Morrison's complaint.