## HAWKINS v. CLEVELAND, C., C. & ST. L. RY. CO.

(Circuit Court of Appeals, Seventh Circuit. October 3, 1898.)

### No. 456.

BANKS AND BANKING—TRUST FUNDS—PREFERRED CLAIM.

Complainant railroad company, being required by the court to give security for the payment of certain outstanding bonds, gave an undertaking, signed by the president of a bank, in which complainant was a depositor, as security. At the same time it gave him a check on the bank for the amount of the bonds, taking from him a certificate, signed by him for the bank, that it had deposited such sum in his name as trustee to secure

him as surety. The bank then charged complainant with the check, and credited the amount to the president as trustee. *Held,* that the bank did not become a trustee, but remained a debtor, simply transferring its indebtedness to the trustee, and on its insolvency complainant was only entitled to the same dividend as other creditors on the amount remaining to the credit of the trustee. Railway Co. v. Hawkins, 79 Fed. 29, reversed.

Appeal from the Circuit Court of the United States for the District of Indiana.

In the month of June, 1890, the following correspondence passed between Mr. Dye, counsel for the appellee railway company, and Mr. Theodore P. Haughey, then president of the Indianapolis National Bank:

"Indianapolis, Ind., June 24, 1890.
"T. P. Haughey, Prest. Indianapolis Nat. Bank, City—Dear Sir: If the local deposits of the C., C., C. & St. L. Ry. Co. are transferred to your bank, will you arrange to furnish surety from time to time upon such appeal and other bonds as may be required by the company, the company undertaking to protect you from loss or harm by reason of the execution of such bonds?
"Very truly,                                              John T. Dye, G. Cl."

"With the above understanding, I will agree to furnish bonds.
"June 24, 1890.                                          Theo. P. Haughey."

The local deposits of the appellee were thereupon made in the Indianapolis National Bank. What bonds were furnished by Mr. Haughey within the scope of the foregoing agreement, apart from what follows in this statement, does not appear and is perhaps immaterial. On the 8th of March, 1892, appellee railway company had on deposit to its credit in the Indianapolis National Bank something over $50,000. On the 7th of March, 1892, the treasurer of the railway company made and subscribed the following document:

"The Cleveland, Cincinnati, Chicago & St. Louis Railway Co.
"$18,000.00.                                             No. A 2,339.
                          "$18,000.00. .
                                          "Cleveland, O., March 7, 1892.
"Pay to the order of Indianapolis Nat'l Bank, Indianapolis, Ind., eighteen thousand and no hundredths dollars.                 G. S. Russell, Treasurer.
"To Indianapolis National Bank, Indianapolis, Ind."

This check was delivered by an agent of appellee on the 8th of March, 1892, to Mr. Haughey at his room or desk in the banking house of the bank. Said agent thereupon, and as part of the transaction, wrote or filled out on a blank the following instrument, which Haughey subscribed as shown, and at once returned or delivered to said agent:

"Indianapolis, March 8, 1892.
"The C., C., C. & St. L. Ry. Co. has this day made a special deposit of eighteen thousand dollars in the Indianapolis National Bank in the name of T. P. Haughey, trustee, to secure him as surety on a bond given under an order of the U. S. circuit court for the payment of C., W. & M. R. R. Co. bonds of the issue of 1871, numbered 449, 866 to 870, inclusive, 902, 1,460, 1,462 to 1,471, inclusive, according to the terms of said order; in all, 18 bonds.
                          "The Indianapolis National Bank,
                                 "By Theo. P. Haughey, President."

Haughey then filled out and delivered to the bank, together with the check (but whether this was done in the presence and with the knowledge of said agent does not clearly appear), a deposit ticket, and the bank thereupon charged the $18,000 in the account of appellee, and credited that sum to Haughey, trustee, in a new account then opened with the latter. The deposit slip was as follows:

"The Indianapolis National Bank.

"Deposited by Theodore P. Haughey, Trustee, March 8, 1892.

|  | Dollars. | Cents. |
|---|---|---|
| Currency ........................................... |  |  |
| Gold ............................................... |  |  |
| Silver ............................................. |  |  |
| Checks on .......................................... | 18,000 | 00" |

On the 11th of March, 1892, the appellee railway company filed its bill against Barnard and Wells in the circuit court of the United States for the district of Indiana. The showing of the bill was, in brief, that the Cincinnati, Wabash & Michigan Railroad Company had mortgaged a line of railroad belonging to that company in Indiana to Wade and Stone, trustees, to secure 2,000 $1,000 bonds. By a series of transactions not material to be detailed on the questions involved in this appeal, Barnard and Wells became substituted as trustees for Wade and Stone; appellee succeeded to a proprietorship over said line of railroad; bondholders having 1,982 of said bonds surrendered the same in exchange for other securities; and 18 of the bonds were still outstanding in the hands of unknown owners. The purpose of appellee's bill was to have the mortgage canceled and satisfied of record upon its "giving security for the payment to the holders of said eighteen missing bonds, when they shall be produced to the clerk of the United States circuit court, of the sums to which they are legally entitled under said mortgage." Afterwards, and on the 7th of November, 1893, the appellee filed its supplemental bill, setting forth that the Indianapolis National Bank was a banking corporation organized under the national banking laws of the United States; that said bank had become insolvent, and that Hawkins had been duly appointed its receiver; that he had qualified and was acting in that capacity; also that, pursuant to appellee's original bill, an interlocutory decree had been made finding that 1,982 of the bonds had been surrendered, and that 18 remained outstanding in the hands of unknown owners, and directing that Barnard and Wells cause the said 1,982 bonds to be canceled "upon the execution of a bond, to be approved by this court, for the payment to the holders of the eighteen missing bonds above described, of the sums to which they shall be entitled under said mortgage of record,"—said decree containing also the further recital: "Thereupon the complainant herein submits to the court its bond and obligation providing for the payment to the holders of said eighteen bonds above numbered and specified, when they shall be produced to the clerk of the United States circuit court, of the sums which said holders shall be legally entitled to receive under said mortgage from the proceeds of said mortgaged property as their pro rata share of the proceeds thereof, which bond is executed by the Cleveland, Cincinnati, Chicago & St. Louis Railway Company, with T. P. Haughey of Indianapolis as surety, and produces to the clerk the certificate of the Indianapolis National Bank showing that it has made a deposit in said bank to the credit of said Haughey as trustee for the sum of $18,000 to secure him as such surety, which bond and surety is now approved by the court; and the said trustees, J. Alfred Barnard and Arthur G. Wells, are ordered and directed to satisfy of record the mortgage hereinabove described upon the surrender and cancellation of the 1,982 bonds held by the Cincinnati, Wabash & Michigan Railway Company." 79 Fed. 29.

The supplemental bill goes on to aver that Haughey was the security on the bond mentioned in the order. Then follows an averment of the transaction which the check, already recited above, and the certificate, were put in evidence to prove. The theory of the supplemental bill is that the bank became trustee of the $18,000; that it converted said trust fund by mingling it with its own property; and that the assets of the bank, as the same went into the hands of the receiver, were chargeable with the trust to pay said $18,000 in full. It is averred that the receiver had in his hands "sufficient funds wherewith to pay the said special deposit of $18,000"; that the receiver disavowed said trust, and claimed that appellee and any other person interested in said fund of $18,000 were mere creditors; that Haughey was wholly insolvent; and that appellee was ready, able, and willing to execute a new bond, with sufficient security, in accordance with the original decree. The prayer was that

the bank be decreed a trustee of the $18,000; that appellee be decreed owner of such money, "subject only to the rights of persons named" in the original order; that appellee be permitted to give a new bond if the court deemed such bond necessary; that the receiver be enjoined from treating the $18,000 as a general deposit or part of the general assets for the creditors; that he be required to pay the whole of it to appellee, etc.

The bank, the receiver Hawkins, and Haughey were specially named as defendants to the supplemental bill. Barnard and Wells were apparently treated as defendants. They and Haughey were defaulted. The receiver answered for himself and for the bank, and appellee put in a replication. In addition to the matters already indicated, it appeared that when the receiver took possession the trustee account for the $18,000 showed on the face of it a credit balance of $9,000, the remaining $9,000 having been withdrawn by the checks of T. P. Haughey, trustee. The court decreed that $9,000 be paid to appellee as a preferred claim, and that the remaining $9,000 be allowed as an unpreferred claim "pari passu with" the claims of "the general creditors," or that the receiver certify the same to the comptroller of the currency of the United States to be paid in due course of administration. From this decree the receiver appeals to this court.

John W. Kern, for appellant.

John T. Dye, for appellee.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

SHOWALTER, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

Counsel for appellee insists that, on the face of the written documents,—the check and the certificate as set forth in the foregoing statement being specially emphasized,—the bank ought to have set apart, out of the credit to appellee then shown on its books, $18,000 in money as a technical special deposit or bailment to be held by the bank until the 18 bonds were paid, and to be then turned over to Haughey if he has paid the bonds, or to appellee railway company if that company has paid them, and so relieved Haughey of his surety obligation. At the time of the deal in question the bank, being debtor to appellee as its depositor in something over $50,000, in fact charged appellee with $18,000, and credited that amount to "Haughey, trustee." Assuming that this procedure by the bank was justified from its standpoint, then it remained a debtor or borrower after as before. Haughey, trustee, had become creditor and depositor to the extent of $18,000, the credit to appellee as depositor was reduced by that sum, and Haughey, trustee, was the person whose check, as against the $18,000 credit, had to be paid. If the bank were now solvent, it may be that, as between Haughey and appellee, a trust would attach to whatever balance there might be in favor of Haughey, trustee, on the books of the bank. The bank being insolvent, the question now concerns the distributive share appropriate to the balance due as shown by the books of the bank on the account of Haughey, trustee. If, as is contended by its counsel, the bank remained simply a debtor for the $18,000 as well after as before the transfer of the credit from appellee to Haughey, trustee, then Haughey, trustee, would not be entitled to a preference over other creditors, nor would appellee or any other person, merely because it or he sustained to Haughey, trustee, the relation of beneficiary, be entitled to a preference.

A trustee, describing himself as such, may often rightly deposit trust moneys in a bank. But this does not make the bank a trustee constructively or otherwise. If a bank receiving a deposit from a trustee has notice that such trustee has no right to make such deposit,—that is to say, to lend the trust moneys to a bank,—then such deposit would be a wrongful conversion, and the bank, having notice, could be treated as constructively a trustee. But, as has been said, trust funds may often be properly put into a bank as a deposit, that being in such instances a prudent disposition of such funds by the trustee; but the bank becomes simply a borrower, and the trustee a depositor, like any other depositor, and in case the bank does become insolvent the trustee has no preference over other creditors. He and those beneficially interested must take simply a distributive share of the assets.

The check dated March 7, 1892, was payable "to the order" of the bank, thus indicating that the $18,000 need not be held as a special deposit or bailment in the custody of the bank, but might be paid to a third party. This check was delivered by appellee, not to some officer of the bank who was himself free from any personal interest in the deal, but to Haughey, who personally was to be the surety. The certificate was thereupon, and in Haughey's presence, written out by appellee's agent, and Haughey subscribed thereto the words, "The Indianapolis National Bank, by Theodore P. Haughey, Prest.," and delivered the same so subscribed at once to appellee; that is, to appellee's said agent. Instead of writing on the back of the check, "Pay to T. P. Haughey, trustee," and subscribing the name of the bank by himself as its president to this indorsement, Haughey immediately prepared the deposit slip, wherein "Theodore P. Haughey, trustee," deposited $18,000, as shown in the statement preceding this opinion, and gave the check, with the slip, to the bank. The bank thereupon, as in effect directed by Haughey, charged appellee in its deposit account with the $18,000, and credited that sum to Haughey, trustee, in a new account then opened with the latter. The certificate reads:

"The C., C., C. & St. L. Ry. Co. has this day made a special deposit of eighteen thousand dollars in the Indianapolis National Bank in the name of T. P. Haughey, trustee, to secure him as surety on a bond given under an order of the U. S. circuit court for the payment of C., W. & M. R. R. Co. bonds of the issue of 1871, numbered 449, 866 to 870, inclusive, 902, 1,460, 1,462 to 1,471, inclusive, according to the terms of said order; in all, 18 bonds."

If Haughey should be called on to pay the 18 bonds, and should then be insolvent, the creditors holding said bonds could, on the principle of equitable subrogation, then resort to any security which Haughey might have to reimburse himself for the payment of the same. But such an equity would not arise in favor of the bondholders till the emergency here indicated. By the terms of the court order referred to, the $18,000 deposit was for Haughey's benefit. It strengthened his ability to answer as surety, and was the means of securing his name in that capacity. The order recites that Barnard and Wells are "to satisfy said mortgage of record," "upon the execution of a bond, to be approved by this court, for the payment, to the holders of the eighteen bonds above described, of the sums to

which they shall be entitled under said mortgage, out of the proceeds of said mortgaged property." The order further identifies the bond as being one executed by appellee, "with T. P. Haughey of Indianapolis as surety"; and the certificate of March 8, 1892, is identified in said order as "the certificate of the Indianapolis National Bank showing that it [appellee] has made a deposit in said bank to the credit of said Haughey, as trustee, for the sum of $18,000 to secure him as such surety"; and then follows in said order the recital, "which bond and surety is now approved by the court," etc. That the $18,000 was not intended in the order to be itself a security to the bondholders is recognized in the prayer of the supplemental bill by the proposal therein that the $18,000 be repaid to appellee upon its giving a new bond with good security.

The check, as has been said, was delivered by appellee to Haughey, and by Haughey to the bank. In thus delivering or presenting the check Haughey construed the papers to mean, so far as the bank was concerned, merely a transfer of credit to the extent of $18,000 from depositor appellee to depositor Haughey, trustee. On that understanding there was nothing improper or unfair in his representing the bank as well as himself in the deal. But, on the construction now proposed by appellee's counsel. Haughey would have been representing, at one and the same time, adverse interests,—himself on the one part, who was to become the surety; and the bank on the other, which was to assume the responsibility of holding $18,000 as a bailment or special deposit, for the purpose, among others, of securing and protecting him. On the theory of the appellee, the bank was to take the attitude of trustee or bailee, and hold safely the $18,000, in order to secure Haughey until he should be relieved of his obligation to pay the 18 bonds, or until he should be reimbursed, in case he had himself been obliged to pay said debt; and Haughey, on his part, was to hold the bank as his security. To put the bank in this position, and subject it to this responsibility, the intervention on its behalf of some agent, other than Haughey, was needful. The writings in the case, when read together, and in view of the fact that the bank had no other representative in the deal than Haughey himself, do not, as it seems to us, mean that the $18,000 was to be a special deposit, for the safety of which, as such special deposit, the bank then and there became chargeable. We think the bank remained, after as before the deal, a debtor for the $18,000. The credit was changed from the account of one depositor to that of another. The receiver is answerable only for the distributive share appropriate to any balance owing from the bank on the account of Haughey, trustee, without preference and as to a general creditor. We resolve the controversy here in favor of the appellant receiver independently of the question—not referred to by counsel for either party, but which we deem fairly debatable—whether or not a national bank has the power, under the act of congress in that behalf, to assume the attitude of a bailee or trustee of a special deposit intended as security for third persons, with interests therein which may become conflicting.

The decree is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.