[No. 19472.    Department Two.    February 24, 1926.]

RUDOLPH W. JOHNSON, *Respondent*, v. H. W. SCHULTZ,
*Appellant*.[1]

[1] GOOD WILL (4)—ACTION—EVIDENCE—SUFFICIENCY.    A finding
that defendant, on sale of his business, agreed not to engage in
a competing business, is sustained by evidence of two wit-
nesses that such was the agreement.

[2] SAME (2)—SALE—CONSIDERATION.    A sale of a business at its
fair market value is a good and sufficient consideration for an
agreement not to engage in a competing business.

[3] SAME (3)—EQUITY (41)—LACHES—TIME FOR COMMENCING SUIT.
Laches in beginning a suit for damages and an injunction
against one engaged in a competing business is not a defense
where the agreement was made November 8, 1923; and the suit
was commenced March 4, 1924, where no injury resulted by
reason of the delay and assertion of the right is not inequi-
table.

[4] SAME (4)—ACTIONS—EVIDENCE—BURDEN OF PROOF.    The burden
of showing laches making it equitable to assert a right to an
injunction against engaging in a competing business, is upon
the defendant, where the suit was commenced before the statu-
tory time has elapsed; and the burden is not sustained where
the defendant shows no profit or loss and no burdensome en-
gagement of any kind in connection with the business under-
taken.

Appeal from a judgment of the superior court for
Spokane county, Webster, J., entered June 20, 1925,
upon findings in favor of plaintiff, in an action to
enjoin the defendant from engaging in a competing
business.    Affirmed.

*E. O. Connor,* for appellant.

*Jno. L. Dirks,* for respondent.

MITCHELL, J.—The Brodie Sales Co., a corporation,
was engaged in the mercantile business on Sprague
avenue in the city of Spokane.    Its capital stock was

[1]Reported in 243 Pac. 644.

$5,000, divided into five thousand shares. Henry W. Schultz owned twenty-five hundred shares. On November 8, 1923, he sold and delivered all of his stock to Rudolph W. Johnson. Johnson, the plaintiff in this action, alleges in his complaint that he paid $3,500 for the stock and in consideration of the promise on the part of Schultz not to engage in a competing business in Spokane. He further alleges in his complaint of December 5, 1924, that the defendant Schultz, in violation of his agreement, had opened up and conducted a competing business on the opposite side of Sprague avenue to the damage of the plaintiff in the sum of $2,500, in which amount he demanded judgment, and further prayed that the defendant be enjoined from further violation of his agreement not to carry on a competing business. In his answer, the defendant denied making a contract not to engage in a competing business in Spokane; he denied that he was engaged in a competing business, but admitted that he was interested in a business on Sprague avenue.

Upon the trial of the case, the court made findings in favor of the plaintiff, among others that, in consideration of $3,500 paid by the plaintiff, the defendant sold and delivered twenty-five hundred shares of the capital stock of the Brodie Sales Co., and agreed not to engage in a competing business in Spokane from that time. It was further found that, in violation of the agreement, the defendant had opened up in March, 1924, and thereafter conducted a competing business across the street from the Brodie Sales Co. The trial court was unable to determine from the evidence the amount of damages suffered by the plaintiff, but held that the plaintiff was entitled to a decree enjoining the defendant from carrying on a competing business in Spokane. Judgment to that effect was entered, from which the defendant has appealed.

[1] The first contention on behalf of the appellant is that the evidence does not show that a contract not to engage in similar business in Spokane was made, or that there was a valid consideration therefor. On the contrary, we think the testimony very clearly shows that such a contract was made. The respondent and two other witnesses testified positively and clearly that it was made, while the appellant and an attorney, who was consulted at the time of the sale of the stock, say no such promise was made, although both admit that the subject was referred to. It may be stated that the one who acted as appellant's attorney was not present during all the negotiations of the parties relating to the sale and contract. The trial judge saw and heard the witnesses as they testified, and his finding upon this controverted fact is sustained, as we are satisfied, by a preponderance of the evidence.

[2] As to whether or not the consideration paid was sufficient to support the contract not to engage in a competing business, there can be no serious question. It is sufficient, even under appellant's version. He testified that the amount paid was one-half of the market value of the assets of the corporation. Such a sale, at the fair market value of all his interest in the business, was of itself a good and sufficient consideration for his accompanying agreement not to engage in a competing business in the city. *Nelson v. Brassington*, 64 Wash. 180, 116 Pac. 629, Ann. Cas. 1913A 289, and cases cited.

[3] The other contention on behalf of the appellant is that the respondent is guilty of inexcusable delay in commencing the action for injunctive relief. No such defense was pleaded, but, because the respondent, in his attempt to show damages sought to be recovered, testified that the appellant engaged in business for the period of time involved, the argument is that laches

as a defense became injected into the case, which must be considered upon the evidence, notwithstanding the absence of pleading. The proposition may be accepted, and yet we find no room in this case for the application of the doctrine. Appellant sold out on November 8, 1923. About March 1, 1924, he commenced a competing business on the opposite side of Sprague avenue and conducted that business for a few weeks, and then moved to another location near by on Sprague avenue, where he conducted the business until this action was commenced, about December 4, 1924. Having seen that the contract not to engage in competing business was made, his violation of that contract by engaging in such business was a continuing infraction of the rights of the respondent. The doctrine of laches as a defense, like that of injunction against which it is aimed, is but an appeal to the sound discretion of the chancellor to whom the application is made. A delay, short of the period fixed by the statute of limitations, is but one, and, oftener than otherwise, not the most important essential of laches. The authorities are numerous, many of them are cited by counsel, that discuss the doctrine of laches as applied to various states of facts, circumstances, rights and relations of persons, ofttimes including third persons, with varying results. But we, of course, confine our consideration of the doctrine as it relates to the facts and circumstances in this case. No right of a third party is involved.

In the case of *Young v. Jones*, 72 Wash. 277, 130 Pac. 90, we said:

"The doctrine of laches as a defense is grounded on the principle of equitable estoppel, which will not permit the late assertion of a right where other persons by reason of the delay will be injured by its assertion."

Authorities cited by counsel for appellant may well

be accepted. 32 C. J., § 56, p. 72 (Injunctions), is quoted as follows:

"A court of equity will not grant relief by injunction where the party seeking it, being cognizant of his rights, and the invasion thereof, does not take those steps to assert them which are open to him, but lies by and suffers his adversary to incur expenses and enter into burdensome engagements which would render the granting of an injunction against the completion of his undertaking, or the use thereof when completed, a great injury to him."

Also 10 R. C. L., § 143, p. 396, 397 (Equity), a portion of the section as follows:

"Hence, it has been said, laches in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no step to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable, and operates as an estoppel against the assertion of the right. When a court sees negligence on one side and injury therefrom on the other it is a ground for denial of relief."

The whole of the section just referred to is approved and set out in full in the case of *Crodle v. Dodge,* 99 Wash. 121, 168 Pac. 986.

The test by which these authorities, and many others that might be mentioned, determine if delay in asserting the right to injunctive relief is unreasonable and inequitable is that the defendant "by reason of the delay will be injured by its assertion;" complainant "suffers his adversary to incur expenses and burdensome engagements;" "when a court sees negligence on one side and injury therefrom on the other;" or as was said in *Crodle v. Dodge, supra:*

"The doctrine finds its origin in the maxim that equity aids the vigilant, not those who slumber on their rights, and rests upon considerations of public policy. Its object is to prevent injustice and hardship, and the principle is never invoked as a mere artificial excuse for denying to a litigant that which in equity and good conscience he is fairly entitled to receive, when the assertion of the claim, though tardy, is within the time limited by statute and the rights of no one have been prejudiced by the delay. Like most equitable doctrines it is to be applied with circumspection and as a means of administering justice. It is not to be employed as a barrier solely for the purpose of defeating meritorious claims grounded upon the plainest principles of common honesty."

[4] In further consideration of the subject, it is important to see upon whom the burden is cast to show that injury has or has not been inflicted upon him who relies upon the defense. This question is discussed by the courts in connection with the period of time, in a given case, compared with that of the analogous statute of limitations. In the case of *Wilson v. Plutus Mining Co.*, 174 Fed. 317, the circuit court of appeals stated the rule to be:

"Under ordinary circumstances a suit in equity will not be stayed before, and will be stayed after, the time fixed by the analogous limitation at law; but if unusual conditions or extraordinary circumstances make it inequitable to allow the prosecution of a suit after a briefer, or to forbid its maintenance after a longer, period than that fixed by the statute, the chancellor will not be bound by the statute, but will determine the extraordinary case in accordance with the equities which condition it. When a suit is brought within the time fixed by the analogous statute, the burden is on the defendant to show, either from the face of the bill or by his answer, that extraordinary circumstances exist which require the application of the doctrine of laches, and, when such a suit is brought after the statutory time has elapsed, the burden is on the complainant to

show, by suitable averments in his bill, that it would be inequitable to apply it to his case. *Kelley v. Boettcher,* 85 Fed. 55, 62, 29 C. C. A. 14, 21; *Ide v. Trorlicht, Duncker & Renard Carpet Co.,* 115 Fed. 137, 148, 53 C. C. A. 341, 352; *Boynton v. Haggart,* 120 Fed. 819, 830, 57 C. C. A. 301, 312; *Williams v. Neely,* 134 Fed. 1, 13, 67 C. C. A. 171, 183, 69 L. R. A. 232; *Brun v. Mann,* 151 Fed. 145, 154, 80 C. C. A. 513, 522, 12 L. R. A. (N. S.) 154.''

To the same effect see the cases of *Costello v. Muheim,* 9 Ariz. 422, 84 Pac. 906, and *Brundy v. Canby,* 50 Mont. 454, 148 Pac. 315.

In this case, the appellant did not meet that burden. The testimony shows that he engaged in selling only a small portion of the different kinds of merchandise handled by the Brodie Sales Co. No one testified that he owned or constructed the building in which he conducted his competing business; or, if renting the place, that he changed or altered it, or added to it any fixtures or furniture, or obligated himself for more than a month to month tenancy. The proof is indefinite as to the amount of his stock of goods. It does not appear that he employs any help. No proof was submitted of profit or loss. There was no evidence that he owes anyone, or that anyone owes him, in connection with the business, and no burdensome engagement of any kind appears to have been undertaken in connection with the business.

It may be stated that there can be no sound public policy which suggests approval of the disregard of personal contracts of this kind, as well as those of other sorts, entered into in good faith upon valuable considerations. In *Barrows v. McMurtry Mfg. Co.,* 54 Colo. 432, 131 Pac. 430, wherein injunctive relief was granted against one who violated his agreement not to engage in a competing business, the court said:

"It is quite as important as a matter of public interest and welfare, that individuals be not allowed, with impunity, to transgress their solemn undertakings, advisedly entered upon, as it is that the public have protection in other respects."

A case in many respects similar to the present one is *Scotton v. Wright*, 13 Del. Ch. 214, 117 Atl. 131, in which it was said:

"If August, 1920, be taken as the extreme point of time from which the complainants noticed the Wright competition, then a period of fourteen months intervened from then until the filing of the bill. The precise length of time intervening between the acquiring of knowledge that the new business was in fact competing with the old business and the filing of the bill, is difficult to fix. But at whatever point it is fixed, I am of opinion, under all the circumstances, that the complainants acted with due diligence. They were entitled to watch their situation for a reasonable length of time in order to observe the extent of the inroads, if any, that would be made upon their business."

Upon consideration of the law and all the evidence, the judgment is affirmed.

TOLMAN, C. J., MAIN, MACKINTOSH, and PARKER, JJ., concur.