[No. 5990–8–II.  Division Two.  April 16, 1984.]

WALTER BROST, ET AL, *Appellants*, v. L.A.N.D., INC., ET AL, *Respondents.*

*Joseph L. Udall,* for appellants.

*Hugh A. Knapp,* for respondents.

PETRIE, J.—When defendants Hales sought foreclosure of their mortgage against defendant L.A.N.D., Inc., in July 1975, they failed to include as party defendants the plaintiffs herein, Brosts, contract vendees of lot 3, one of the lots in the property foreclosed. Brosts' contract was later in time to Hales' mortgage, but it was recorded before foreclosure commenced. The public notice of the sheriff's sale did not comply with the provisions of RCW 6.24.010. Within a month after the sale in January 1976, Hales became aware that Brosts claimed some interest in lot 3. Hales purchased the property at the sale but failed to obtain an order of confirmation of sale, as required by

RCW 6.24.100, until some time after judgment was entered.[1]

In the summer of 1975, Brosts' tender of their final payment to L.A.N.D., Inc., was refused with the terse comment by its president that "title was clouded by litigation." Shortly thereafter Brosts moved to California. They made no effort to enforce their contract until 1980 despite the fact that they learned of the sheriff's sale a month after the sale. This action is against L.A.N.D., Inc., for specific enforcement of the contract[2] and against Hales to invalidate the sheriff's deed and exercise a right of redemption. Despite finding the irregularities in the foreclosure action and the sheriff's sale, the trial court dismissed Brosts' complaint and quieted title in the "Hales against the Brosts" *solely* under the doctrine of laches. Brosts appeal. We reverse and direct the trial court to resolve the issue of Brosts' equitable right to redeem the land from the mortgage.

■ First, it is eminently clear that Brosts' interest in the lot they purchased is not affected by the foreclosure. Before a court can extinguish a person's duly recorded interest in property in a mortgage foreclosure action, due process requires that the person be joined as a party in the action. G. Osborne, *Mortgages* § 321 (2d ed. 1970); *Valentine v. Portland Timber & Land Holding Co.*, 15 Wn. App. 124, 128, 547 P.2d 912 (1976).

Nevertheless, Brosts' equitable right to redeem the land

---

[1]We are advised that after this appeal was filed, Hales obtained an order confirming sale on April 1, 1982 in the original foreclosure action. Apparently, no appeal has been filed challenging that order. We are *not* advised of any attempt by L.A.N.D., Inc., or anyone else, to exercise *statutory* rights of redemption within 1 year of entry of the order.

[2]Following L.A.N.D., Inc.'s default in this action the court entered judgment against L.A.N.D., Inc., on August 28, 1981, directing specific performance and ordering L.A.N.D., Inc., "to deliver clear title, free of encumbrances to the subject real property, . . ." Exactly how L.A.N.D., Inc., could execute such a fulfillment deed, in view of the court's disposition of this cause, is somewhat of a mystery.

from the mortgage[3] is subject to certain defenses such as running of an appropriate statute of limitation or laches, as asserted by Hales in this case. Furthermore, though Brosts are successors in interest to L.A.N.D., Inc., their *statutory* right to redeem from the *sale* expired "one year after the sale." RCW 6.24.140. However, Brosts' *equitable* right to redeem the land from the prior *mortgage* (from whose foreclosure decree they were exempt) did not expire until 6 years after their own right to foreclosure accrued. *Krutz v. Gardner,* 25 Wash. 396, 65 P. 771 (1901). Because their right to foreclose did not accrue at least until the summer of 1975, their equitable right to redeem the land from the mortgage did not expire until 1981. Their action to redeem was timely filed.

The real issue, therefore, is whether their right of equitable redemption expired by reason of the doctrine of laches. We note first that under ordinary circumstances the doctrine of laches should not be employed to bar an action short of the applicable statute of limitations. *Auve v. Wenzlaff,* 162 Wash. 368, 298 P. 686 (1931). A court is generally precluded, absent highly unusual circumstances, from imposing a shorter period under the doctrine of laches than that of the relevant statute of limitations. *Auve v. Wenzlaff, supra.* We find no such unusual circumstances present in the case at bench.

We hold that the trial court improperly allowed Hales to avail themselves of this extraordinary defense. The purpose of laches is to prevent injustice and hardship. *See Crodle v. Dodge,* 99 Wash. 121, 168 P. 986 (1917); *Johnson v. Schultz,* 137 Wash. 584, 243 P. 644 (1926). It is only appropriate to apply laches when a party, knowing his rights, takes no steps to enforce them and the condition of the other party has *in good faith become so changed that he*

---

[3]To have equitable redemption rights, a person must have an interest in land and it must be derived in some way, mediate or immediate, from or through or in the right of the mortgagor so as to constitute a part of the mortgagor's original equity of redemption. 4 *American Law of Property* § 16.171 (A. Casner ed. 1952).

*cannot be restored to his former state. See Crodle v. Dodge,* 99 Wash. at 132. However, "[s]o long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, . . ." *Crodle v. Dodge,* 99 Wash. at 131. Laches is an extraordinary remedy to prevent injustice and hardship and should not be employed as

> a mere artificial excuse for denying to a litigant that which in equity and good conscience he is fairly entitled to receive, when the assertion of the claim, *though tardy, is within the time limited by statute* and the *rights of no one have been prejudiced by the delay.* Like most equitable doctrines it is to be applied with circumspection and as a means of administering justice. It is not to be employed as a barrier solely for the purpose of defeating meritorious claims grounded upon the plainest principles of common honesty.

(Italics ours.) *Crodle v. Dodge,* 99 Wash. at 131–32. Determining whether injury cognizable under the doctrine of laches occurs depends on assessing the inherent equities of a particular case. *Crodle v. Dodge, supra.*

Applying the doctrine of laches in the case at bench undercuts the purpose of the doctrine. Rather than preventing injustice and hardship, the trial court's decision creates an injustice. It causes the divestiture of Brosts' property interest in lot 3 without having given Brosts the constitutionally required notice or any opportunity to protect their interests. *See Valentine v. Portland Timber & Land Holding Co., supra.* The inherent equities of the instant situation militate against such a result. The Brosts had a purchaser's interest in the land through a recorded real estate contract and, upon their tender of the final payment, were entitled to a fulfillment deed.[4] The Hales, L.A.N.D., Inc.'s, successors in interest, flagrantly disregarded constitutionally and statutorily prescribed procedures governing foreclosure sales and neither they nor

---

[4]Walter May, L.A.N.D., Inc.'s president testified that Brosts' payments "were always current . . ." and, after Brosts tendered the final payment, he tried—unsucc⸱ ᶠully—to arrange with Hales "that they release that particular lot, . . ."

L.A.N.D., Inc., made any effort at all to apprise the Brosts of the situation.

Many of Hales' alleged injuries can be attributed to their own delay. They knew within 1 month of the sheriff's sale that their former attorney had improperly conducted their foreclosure action by omitting Brosts as defendants. Had they wished to bring a malpractice action, they could have done so at that time. Moreover, if Hales had sued their attorney, they undoubtedly would have discovered that they had failed to move for confirmation and that the sheriff had issued an invalid deed. They certainly had reason to inquire into the validity of the entire foreclosure procedure. Furthermore, when Hales paid taxes on lot 3 and improved it, they knew that Brosts had an interest in the property which had not been extinguished by the foreclosure action. The Brosts' delay in asserting their contractual rights did not cause Hales, in good faith, to change their position.

Furthermore, the defense of laches is improperly invoked when both parties are equally at fault in creating the delay. *McKnight v. Basilides,* 19 Wn.2d 391, 143 P.2d 307 (1943); *National City Bank v. International Trading Co. of Am., Inc.,* 167 Wash. 311, 9 P.2d 81 (1932). Though Brosts may have failed to enforce their contract promptly, Hales also languished on their rights. They took no steps to compel Brosts to make their final payment, to declare a forfeiture, to remedy the defect in the foreclosure, or to compel Brosts to exercise their redemption rights. Hence, their own dilatory conduct precludes them from relying on the defense of laches.

Because the trial court decided to quiet title in the Hales against the Brosts under the doctrine of laches, the court did not consider the extent of Brosts' redemption rights. On remand, the trial court will be obliged to consider that issue. Because neither party to this appeal has briefed that issue, we resist any comment on the extent of Brosts' equitable right to redeem the land from the mortgage or any part thereof.

Because the trial court rendered its opinion solely on the

basis of laches, a basis which we find totally untenable, we reverse and remand with direction to address and resolve the issue of Brosts' equitable right to redeem the land from the mortgage.

PETRICH, C.J., and WORSWICK, J., concur.