**RANCH HAND FOODS, INC.,**
**Respondent/Cross Appellant,**

v.

**POLAR PAK FOODS, INC., Jeremy P.**
**Lumianski, and Lazar B. Jovanovic**
**and James W. Hall, Appellants/Respon-**
**dents.**

**Nos. WD 35318, WD 35352.**

Missouri Court of Appeals,
Western District.

March 26, 1985.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
April 30, 1985.

James E. Kelley, Jr., Smith, Gill, Fisher & Butts, Inc., Kansas City, for respondent/cross appellant.

David R. Frensley, Gary V. Fulghum, Ryder, Rose, Frensley & Shapiro, Kansas City, for appellants/respondents.

Before KENNEDY, P.J., and CLARK and NUGENT, JJ.

CLARK, Judge.

In this court tried case, plaintiff below, Ranch Hand Foods, Inc., recovered judgment for actual damages against all defendants and judgments for punitive damages against the individual defendants. In the aggregate, the judgments total $262,-500.00. Nominally, this appeal is on behalf of all defendants, but the points raised, apart from complaint as to the evidentiary support for the damage award, are particularized only as to certain aspects of the case against certain defendants. Those points will be recited as their disposition is discussed. Ranch Hand has lodged a cross appeal, also to be discussed separately, in regard to an award made in favor of individual defendants Lumianski and Jovanovic.

The facts of the case, in contrast to the prolix documentation, pleadings, briefing and argument presented here and to the trial court, are relatively simple and are essentially uncontested. The crux of Ranch Hand's complaint, the factual underpinning for which the appellants do not deny, is that the individual defendants, Hall, Lumianski and Jovanovic, while in the employ of Ranch Hand and while serving as corporate officers of Ranch Hand, undertook to form a business to engage in competition with Ranch Hand. In the process, defendant Polar Pak was organized as a corporate vehicle to conduct the competing business and Ranch Hand trade was diverted to Polar Pak.

A major difficulty which virtually precludes conventional and orderly disposition of the appeal is the content of the trial court judgment when appraised as an ostensible disposition of Ranch Hand's four count petition. In that petition, relief was variously sought against the defendants, not all of whom were named in each count, on alternate theories of tort and contract, and for injunctive relief and actual and punitive damages. The judgment, however, made no reference to the petition counts or the alternate bases of possible liability. Instead, the trial court entered findings of fact favorable to Ranch Hand on all phases of the case, denied injunctive relief, awarded compensatory damages apparently on grounds of joint and severable liability against all defendants, and assessed exemplary damages particularized as to individual defendants. An understanding of the dilemma which this disposition poses requires a resurvey of the Ranch Hand petition counts preceded by a description of the roles of the participants in these corporate enterprises.

Defendant Hall was president of Ranch Hand at times material to the case. In 1975 in anticipation of the transfer of Hall to California as general manager of Savory Products, Inc., the parent company to Ranch Hand, a replacement manager for Ranch Hand was sought. The consequence was the employment of defendant Lumianski who commenced work for Ranch Hand January 5, 1976 and was elected vice-president. Defendant Jovanovic was first hired by Ranch Hand in 1971. He left for other employment in 1973, but returned to Ranch Hand in 1976 as vice-president of operations. Between January, 1976 and June 24, 1980, when the Polar Pak competitive venture was disclosed, Lumianski and Jovanovic were officers and employees of Ranch Hand. Each was summarily discharged on the last mentioned date. Hall, although continuing as president of Ranch Hand, was engaged in managerial duties for Savory Products after January, 1976. He was relieved of that position and also as president of Ranch Hand on April 10, 1980 for reasons apparently unrelated to the Polar Pak enterprise. The critical period for purposes of this suit commenced in February, 1980 when Hall, Lumianski and Jovanovic first met to plan the Polar Pak venture and continued thereafter as the scheme was implemented.

The counts of the Ranch Hand petition sought recovery against the defendants, Polar Pak, Hall, Lumianski and Jovanovic, as follows. In Count I it was alleged that Lumianski was bound by the express terms of a contract with Ranch Hand to refrain from engaging in competition with Ranch Hand for a period of two years following

termination of Lumianski's employment. The participation by Lumianski as an officer, director and stockholder in Polar Pak was asserted to be a violation of that contract and, in consequence, Count I sought damages, costs and an injunction. Only Lumianski was affected by Ranch Hand's Count I claim.

In Count II, Ranch Hand asserted that as corporate officers, Hall, Lumianski and Jovanovic owed a fiduciary duty to Ranch Hand which they violated by commencing the competing business of Polar Pak and soliciting business from Ranch Hand customers. The only relief prayed as to Count II was an injunction to restrain the individual defendants from participation in or employment by Polar Pak and for costs. No relief as such was sought in Count II against Polar Pak.

In Count III, the claim was advanced that Hall and Jovanovic, joined later by Polar Pak, conspired with Lumianski to accomplish the breach of the employment contract between Ranch Hand and Lumianski. Injunctive relief, similar to that sought in Count II was prayed with the addition of a claim for injunction against Polar Pak.

Finally, in Count IV, Ranch Hand incorporated all previous allegations of the other counts and asked that compensatory and punitive damages be awarded against all defendants.

In findings of fact and conclusions of law which accompanied the judgment entry described earlier, the trial court found, in substance, that the restrictive covenant in Lumianski's employment contract was enforceable and was breached, that the individual defendants and Polar Pak conspired to breach the employment contract and that the individual defendants breached their fiduciary duty as employees and officers of Ranch Hand when they misappropriated trade secrets and solicited business for Polar Pak from Ranch Hand customers.

It is impossible to ascertain whether damages were awarded on the Count I contract action, the Count II breach of fiduciary duty by the individuals as Ranch Hand officers, the Count III conspiracy to breach the agreement not to compete or a combination of the three.

Inexplicably, the trial court denied respondent the injunctive relief as prayed in Counts I, II and III of the petition, despite its determination of all factual issues necessary to that relief in favor of the complainant, Ranch Hand.[1]

With this prelude, we turn to the points raised on appeal by defendants.

## THE LUMIANSKI EMPLOYMENT CONTRACT

In their first point, appellants contend the court erred in finding Lumianski's covenant not to enter into a business competitive with Ranch Hand to be enforceable. To support this position, they argue that the restrictive covenant is to be tested under Kansas law where, they assert, the agreement would not be valid because no consideration supported Lumianski's promise not to compete with Ranch Hand for two years following cessation of his employment. This point necessarily affects not only the Count I claim against Lumianski for breach of contract but also the conspiracy claims in tort set out in Count III against all defendants. Obviously, if the contract is not valid for want of consideration, then a conspiracy to breach the contract does not give rise to a viable tort action. Appellants do not pursue this theory or raise any argument on the subject. For purposes of this opinion, the point is moot because we reject the contention that the contract fails for want of consideration.

Appellants' contention that the employment contract, and the non-compete clause in particular, are invalid rests upon two propositions, first, that Kansas law controls the evaluation of the contract and,

---

1. No cross appeal was lodged by Ranch Hand raising the issue as to denial of injunctive relief. Because the case is to be remanded for redetermination of damages and because the damages include prospective losses, the propriety of enjoining future competition by appellants will resurface as a justiciable question.

second, that under Kansas law, this agreement fails for want of consideration. Respondent asserts that the contract is to be tested by Missouri law which would hold the contract valid. On the choice of law issue, both contestants cite *National Starch and Chemical Corp. v. Newman*, 577 S.W.2d 99 (Mo.App.1978).

In *National Starch*, the court adopted the Restatement (Second) of *Conflict of Laws*, § 188, test which directs that in contract cases, the law of the state where the predominant contract interests lie will be applied. As factors to be considered, the court looks to the place of contracting, place of negotiation, place of performance,[2] location of subject matter and domicile of the parties. In the subject case, the majority of these factors are associated with Kansas. The Ranch Hand place of business was in Kansas, Lumianski was a Kansas resident and the contract services were to be performed in Kansas. Although no direct evidence on the subject was presented, there is reasonable ground to infer that the contract was signed in Kansas. The only factors associated with Missouri were Ranch Hand's incorporation in Missouri, use of a Missouri lawyer to draw the contract and the fact that Missouri customers were diverted by appellants from Ranch Hand to Polar Pak. As will hereafter appear, there is no fundamental disagreement between Kansas and Missouri law that continued employment after a restrictive agreement is signed supplies consideration for the promise, but for purposes of ruling the contention, we look to Kansas law.

As appellants pose the point of contract invalidity, they contend Lumianski received nothing in return for signing the employment contract some four months after he had started work under agreed terms with Ranch Hand, which did not include the non-compete clause. The facts as to this aspect of the case were generally agreed. Lumianski was contacted at some time in late 1975 by Hall, then the Ranch Hand president, and Lumianski's employment was discussed. Two letters from Hall to Lumianski followed, one December 3 and the second December 26, 1975. The first set out proposed details of salary, profit sharing, bonus and stock options. The last confirmed agreement for Lumianski to commence work in January, 1976 and finalized compensation and fringe benefit details. The formal employment contract at issue here was not presented to Lumianski for signature until May, 1976 and introduced the non-compete condition for the first time in the employment undertaking.

The employment contract was prepared by Ranch Hand's lawyer who used the December 26, 1975 letter as definitive of the compensation and benefits to be paid Lumianski. The contract was given to Lumianski for signature and although Lumianski expressed some surprise that the non-compete clause was included, he made no issue of the addition and signed the contract without alteration. In the conversation between Lumianski and Hall at the time, there was no discussion initiated by either as to what consequences would possibly result if Lumianski refused to sign. From May, 1976 until some four years later when the Polar Pak venture was revealed, Lumianski progressed in his employment by Ranch Hand, receiving increased responsibilities and correspondingly increased compensation.

Appellants argue that under Kansas law, if a restrictive covenant affecting post-employment activities of the employee is solicited after the employee has already been hired under terms which do not include that restriction, the mere continuation of the employment relation furnishes no consideration for the supplementary contract. Cited by appellant as authoritative on this proposition is *Puritan-Bennett Corp. v.*

**2.** Restatement (Second) of *Conflict of Laws*, § 196 is specifically relevant, if there be any question that factors associated with Kansas outweigh Missouri contracts. Section 196 directs the local law of the state where the major portions of contract services are performed will determine contract validity in conflicting relationship situations. Here, Lumianski's services were, in the main, to be performed at the Ranch Hand Kansas office site.

*Richter*, 8 Kan.App.2d 311, 657 P.2d 589 (1983) as modified 235 Kan. 251, 679 P.2d 206 (1984). The cited case is certainly in point on this precise issue and its value is enhanced by the recent date of the opinion. Both as to result and rationale, however, the case supports the validity of the Lumianski non-compete contract and serves as a ground to deny appellants' point of error.

The *Puritan-Bennett* case closely parallels this case on the facts in that Richter, the employee, was hired on terms set out in a letter from Puritan-Bennett. He was requested to sign an employment contract, including a restrictive covenant as to post-employment competition, after his employment had already been agreed upon without mention of that condition. As did Lumianski here, Richter expressed surprise at the additional requirement, but he signed the agreement without active protest. After working for Puritan-Bennett for seven years, Richter resigned and took employment with a competitor of Puritan-Bennett. Suit was brought to enforce the agreement and to prevent Richter from rendering similar services to the new employer and from disclosing Puritan-Bennett trade secrets.

The Kansas appellate court held Richter's contract to be enforceable and to have been supported by consideration notwithstanding the fact that it was entered into after Richter had already been employed. The holding in the case is that continued employment after the employee has agreed to a restrictive covenant limiting his post-employment activities constitutes sufficient consideration, particularly where promotions, increased responsibilities and improved compensation are implemented after the employee enters into the agreement. In the language of the case, "Thus, an employee who has been retained, promoted and entrusted with company secrets for a significant time after execution of such a covenant has received a benefit to which he was not automatically entitled." 657 P.2d at 592.

The facts in the present case were that Lumianski continued in the employment of Ranch Hand for more than four years after the contract in issue was signed. During that time, Lumianski was promoted within the Ranch Hand organization and he received added responsibility and increases in compensation. This was adequate consideration to support his promise not to compete with Ranch Hand for two years after termination of his Ranch Hand employment. This view is consistent with Missouri law, *Reed, Roberts Associates, Inc. v. Bailenson*, 537 S.W.2d 238 (Mo.App.1976) and with prevailing authority generally. *Iowa Glass Depot, Inc. v. Jindrich*, 338 N.W.2d 376 (Iowa 1983); *Simko, Inc. v. Graymar Co.*, 55 Md.App. 561, 464 A.2d 1104 (1983); *Brost v. L.A.N.D., Inc.*, 37 Wash.App. 372, 680 P.2d 453 (1984).

Appellants assert two grounds for an argument that Puritan-Bennett, despite its adverse ruling, may be construed as favoring their position. First, they point out that the opinion mentions the reliance employers place on employee loyalty, reinforced by the contract covenant, as a basis for dispensing responsibilities. They argue that Ranch Hand proved no such reliance or even knowledge by the principals of Savory Products, Inc. in California. Second, they say Lumianski, unlike Richter, was not told his employment continuation was conditioned on his signing the contract.

This argument must be tempered by recognition that the evidence to which appellants refer came from Hall, who was at the time of the transaction the local manager and president of Ranch Hand. His status as a co-defendant with Lumianski at trial at least suggests that his recollection of events would not tend to be impartial. The trial judge was of course entitled to discount the effect and value of Hall's evidence, as he apparently did. In any event, and even accepting this evidence, the *Puritan-Bennett* case imposes no requirement that an employer expressly rely on a non-compete agreement in any particular aspect of the continuing employment arrangement nor does it say that a threat of discharge must be conveyed before consideration will be established to support the non-compete agreement. In fact, the *Puri-*

*tan-Bennett* opinion observes that no management officials of the company ever told Richter his employment was conditioned on execution of the contract.

■ Appellants also seek to avoid the effect of the non-compete covenant by contending that even if valid, the restriction is not enforceable because it was not reasonably necessary to the protection of Ranch Hand. This argument is not one addressed to temporal or spatial limits but to whether Ranch Hand had legitimate interests in the subject protected. Appellants assert that by Ranch Hand's course of conduct in failing to obtain similar agreements from all its employees, it has indicated little regard for or concern over the subject.

The principal subject of the Lumianski's covenant, as it developed by appellants' later competing business venture, was Ranch Hand's customer base. In the case of *Eastern Distributing Co., Inc. v. Flynn*, 222 Kan. 666, 567 P.2d 1371 (1977) in an analysis of "reasonableness" in a route salesman's contract not to compete, the court held that customer contacts represent a legitimate employer interest entitled to protection through enforcement of a restrictive agreement made by the employee.

■ Finally, appellants say the agreement Lumianski signed in May, 1976 was replaced by a new agreement in January, 1978 which contained no restriction on competition or, that sufficient ambiguity existed so that the circumstances should favor a construction of the documents to exclude the covenant. The basis for this claim is a letter Hall wrote Lumianski in January, 1978 setting out increases in Lumianski's salary and bonus schedule accompanied by a request that Lumianski amend his employment contract accordingly. The contention lacks any merit. The letter does not purport to be other than a formal notification to Lumianski of his compensation increase, all with reference to the existing employment contract. There is no factual ground to argue that the original contract, as amended in the matters of salary and bonus, did not survive, or that any ambiguity was created.

We conclude that the restrictive covenants of Lumianski's employment contract bound him to refrain from competing with Ranch Hand for business for two years after his employment was terminated, that the agreement was supported by consideration and it was enforceable.

## THE BREACH OF FIDUCIARY DUTY BY APPELLANTS AS RANCH HAND OFFICERS AND THE CONSPIRACY TO BREACH LUMIANSKI'S EMPLOYMENT CONTRACT

Appellants do not offer any challenge to the facts or law involved in Ranch Hand's claims for breach of fiduciary duty and conspiracy, but an understanding of the remaining problems in this case requires an analysis of these tort causes. The first theory of liability was based on the fiduciary duty owed by corporate officers to the corporation. The allegation and proof was that appellants Hall, Lumianski and Jovanovic while serving as officers of Ranch Hand, planned the Polar Pak enterprise, used Ranch Hand facilities to do so and diverted Ranch Hand business to Polar Pak. There was no dispute that these appellants were occupied in planning the competing business while drawing salaries from Ranch Hand, that they copied and appropriated Ranch Hand customer lists and made plate tracings of Ranch Hand machinery for use in the design and production of similar machinery for Polar Pak.

The second theory of liability was based on a conspiracy among all the appellants to engage in a cooperative venture, the object of which was to establish a vehicle for Lumianski to compete with Ranch Hand in violation of his contract not to engage in that activity. Although this theory is distinct and severable from the first theory, dependent as it was on the status of appellants as corporate officers, the underlying facts were otherwise identical in character and proof. In neither case are those facts now open to any contest.

It is appropriate to establish at this point the controlling law applicable to the tort claims. The first theory, breach of fiduciary duty by corporate officers, invokes Missouri law in this case. Ranch Hand was a Missouri corporation and it is the law of the state of incorporation which governs a claim against officers or directors for failure to act with fidelity. *St. Louis Union Trust Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 412 F.Supp. 45 (E.D.Mo.1976) *reversed* 562 F.2d 1040 (8th Cir.1977) *cert. denied*, 435 U.S. 925, 98 S.Ct. 1490, 55 L.Ed.2d 519 (1978); Restatement (Second) of *Conflict of Laws*, § 309. Missouri cases are legion which hold that corporate officers may not profit personally at the expense of the corporation or the stockholders and, if they do, they may be compelled to restore that which has been wrongfully appropriated. *Hyde Park Amusement Co. v. Mogler*, 358 Mo. 336, 214 S.W.2d 541 (1948); *Ramacciotti v. Joe Simpkins, Inc.*, 427 S.W.2d 425 (Mo. 1968).

The second theory of respondents damage claim, conspiracy to breach the covenant against competitive activity, is also controlled by Missouri law. Polar Pak, the vehicle for diversion of Ranch Hand customers and business, was organized as a Missouri corporation and its place of business was in Missouri. Moreover, the majority of customers whose business was transferred, through appellants' efforts, from Ranch Hand were located in Missouri. The choice of law principles of Restatement (Second) of *Conflict of Laws*, § 145 based on significant contacts directs the focus of liability and damage evaluation to Missouri law. This tort claim of conspiracy is recognized in Missouri and requires the conspirators to account for losses of profits attributable to the wrongdoing. *Mills v. Murray*, 472 S.W.2d 6 (Mo. App.1971).

## ACTUAL DAMAGES

As was noted earlier in this opinion, the trial court awarded respondent judgment for $200,000.00 actual damages. In their second point, augmented by some fifteen sub-points, appellants contend the damage award was not supported by the evidence. We agree. The findings by the trial court expressly denied credence to the only evidence which would have supported proof of actual damages in an amount even approaching the sum awarded.

The actual damages, which Ranch Hand claimed, were generally divided into two groups. The first consisted of employee salary and benefits lost and expenses incurred and were measurable by those values which appellants received during the time they were working in the interests of Polar Pak but were on salary for and were charging expenses to Ranch Hand. This was the smaller and relatively minor portion of damages claimed. The second and major category of damage consisted of existing and future losses to Ranch Hand caused first by the failure of appellants to enhance and further the business of Ranch Hand, as they were employed to do, and caused additionally by the active competition of appellants in diverting business to Polar Pak. This second damage group was obviously incapable of precise measure because the business potential of Ranch Hand, dependent on the faithful performance and best efforts of appellants and the vagaries of the product market and expenses, did not and never would actually materialize. What Ranch Hand would have realized but for the wrongdoing of appellants and what values were lost thereby and from the misappropriation of trade secrets were at best matters of estimation.

In some cases, the evidence weighed in common experience demonstrates that a substantial pecuniary loss has occurred, but at the same time it is apparent that the loss is of a character which defies exact proof. In that situation, it is reasonable to require a lesser degree of certainty as to the amount of loss, leaving a greater degree of discretion to the court or jury. *Plas-Chem Corp. v. Solmica, Inc.*, 434 S.W.2d 522 (Mo.1968) quoting Restatement (Second) of *Contracts*, § 331 Comment. This principle is applicable in the case of

proof of lost profits. *Coach House of Ward Parkway Inc. v. Ward Parkway Shops Inc.*, 471 S.W.2d 464 (Mo.1971). As tempered by the facts of the case, however, lost profits must be proven with reasonable certainty. *Herrington v. Hall*, 624 S.W.2d 148 (Mo.App.1981).

■ The damage which Ranch Hand suffered in lost business because appellants planned and operated the competing enterprise of Polar Pak using Ranch Hand resources to do so could only be estimated using assumptions and projections. In an attempt to prove these damages to the degree which the subject permitted, respondent offered witness Dr. Darwin Daicoff, an economist and college professor. The credentials of Daicoff as an expert are not questioned. For purposes of expressing his opinions on the subject, Daicoff analyzed the past costs of production and sales of Ranch Hand products and the extent of business which had been diverted to Polar Pak. He took into account various economic factors, calculated losses due to unrealized business and projected those losses into the future. He also evaluated the loss of Ranch Hand trade secrets in terms of the business advantage thereby accruing to Polar Pak. In short, Daicoff purported to translate into dollar figures the difference between the existing economic condition of Ranch Hand and the condition it would have enjoyed, projected into the future, but for the wrongdoing by appellants. Upon Daicoff's testimony depended the entirety of respondent's case for damages attributable to lost profits, some $340,000.00 if the value of trade secrets is included. The other damages of lost salary, benefits and expenses totalled at most $55,000.00.

The trial judge, however, rejected witness Daicoff's evidence. In its judgment, the trial court announced, "The court cannot predicate a calculation of plaintiff's losses on the testimony of Dr. Daicoff because it is entirely too speculative." The court also noted that Dr. Daicoff's calculations "are entirely too capricious." If the testimony by Dr. Daicoff is wholly or substantially rejected in the case, as the trial court found, then the damage award fails because it is unsupported by any substantial evidence. The conclusion becomes inescapable when, upon further scrutiny of the judgment entry, it is found that the trial court expressly awarded actual damages for "lost income which would have been derived through sales to plaintiff's customers misappropriated by defendants" and for "misappropriation of plaintiff's trade secrets." Without the Daicoff evidence, there is no value to place on the lost business and the damage award becomes the product of sheer speculation and guess work.

The judgment for actual damages must be reversed because the rejection by the trial judge of Dr. Daicoff's testimony and the concurrent award of $200,000.00 actual damages are in irreconcilable conflict. To permit evaluation and rendition of a damage award consistent with the proof which is accepted, the cause must be remanded for a new trial on the issue of damages.

The reversal of the damage award will also require, of necessity, the reconsideration of interrelated subjects, namely, the claim for punitive damages and the prayer for injunction. A redetermination of punitive damages to be allowed, if any, is an obvious consequence because of the dependent relationship between actual and punitive damage allowances. The claim for injunctive relief is also reopened, conditionally, if it be respondent's claim that actual damages are to include projections of future business losses. If the facts at the time of retrial present a current state of active competition by Polar Pak, a decision that Polar Pak should be enjoined to cease that activity would constitute an alternate to awarding respondent actual damages for future losses of this character. The option, of course, lies with respondent to abandon or pursue the claim for injunction.

### ELECTION AMONG LIABILITY THEORIES AND PARTICULARIZATION OF DAMAGE AWARDS

Upon retrial of this case on the issues of damages, it will be necessary for the par-

ties and the court to remedy defects in the present judgment attributable to the failure of the court to conform the judgment to the counts of the petition. The parties do not raise this issue in their briefs, but the problem will resurface if a second judgment is rendered which gives no recognition to the concurrent and duplicative character of certain claims and the fact that all defendants are not necessarily liable, jointly and severally, for a single judgment.

■ A few examples will serve to illustrate the need for certain elections on the part of respondent and a delineation by the trial court of the grounds of liability, according to the petition counts,[3] for the damage awards entered against each defendant. In the case of Lumianski, Count I alleges a contract cause limited to his activities in competing with Ranch Hand during a two year period following his discharge. Respondent cannot pursue this theory of recovery and at the same time claim damages accumulated during the same period under a theory that Lumianski had breached his fiduciary duty as an officer of Ranch Hand. Conversely, no damages accrued by reason of Lumianski's activities before his employment termination or more than two years thereafter are recoverable under the breach of contract theory because that cause arose only when Lumianski's employment by Ranch Hand ended and the restriction on his business ventures expired two years thereafter.

As to the liabilities of the particular defendants, the claim against Hall for breach of fiduciary duty as a Ranch Hand officer is not coextensive with the same claim against Lumianski and Jovanovic. According to the evidence, much of the planning and all of the implementation of the Polar Pak venture occurred in May and June of 1980, these being the dates when Ranch Hand customer lists were copied, machinery tracings were made and Polar Pak was incorporated. By then, however, Hall was no longer an officer of Ranch Hand. Liability may follow Hall's participation in the conspiracy to breach Lumianski's employment contract, but his fiduciary obligation as a corporate officer ended April 10, 1980 when his employment was terminated.

The foregoing does not purport to be a full exposition of the distinctions which must be made among the claims against the various defendants, and the theories of liability, not to mention the applicable measures of damage. It is sufficient to observe that the simplistic approach of entering one judgment holding all defendants jointly and severally liable for a single amount of actual damages would not survive appellate review if properly challenged by an offended party.

## OTHER CONTENTIONS OF TRIAL ERROR

In three additional points, appellants argue that the court erred in awarding respondent attorney fees, that a conclusion holding Hall breached an employment contract was contrary to the evidence and that preparations to start the Polar Pak business were not, as the trial court ruled, per se unlawful. We indulge a brief discussion of these points ex gratia despite the failure of the statement of the points to comply with Rule 84.04(d). Because appellants failed to set out in the statement of the points wherein and why it is alleged the trial court committed error, they must accept the perception of the points as they appear to be from the content of argument.

In the first point, the complaint is that the trial judge seems to have awarded attorney fees by including a sum in the damage award without identifying the allowance as such. Appellants argue that attorney fees were not recoverable under the theories of liability advanced. The content of the trial court's findings leaves the matter in question although there is a basis to suspect that the respondent's expense for legal services was included as an element of damages. The question, however, need

---

**3.** Although actual damages are prayed only in Count IV, the incorporation by reference of prior counts is assumed to amend, in effect, Counts I, II and III so that actual damages are sought under the liability theories of each of those counts.

not be decided in view of the decision to reverse the damage award and remand the case for retrial on that issue. It is assumed that the court will, upon retrial, eliminate any ambiguity on this account from a subsequent judgment entry.

Next, appellant takes issue with the court's finding that Hall breached an employment contract with Ranch Hand dated February 24, 1976 by conduct extending to July 10, 1980, some ninety days after Hall had been discharged. This finding is obviously erroneous, even if it be assumed that the contract for Hall's employment by Ranch Hand was not effectively abandoned by the parties when Hall entered upon new duties for Savory Products in 1978. More importantly, respondent asserted no claim in its petition counts against Hall for breach of an employment contract, only the claims that Hall breached a fiduciary duty as a Ranch Hand officer and conspired to aid Lumianski in the breach of his contract. Again, because of reversal of the judgment for damages, the error may be rectified on retrial. If, as appellants contend, the damages were given in part for breach by Hall of any employment contract, that element of damages should be excluded from the subsequent judgment.

Finally, appellants argue that plans they made to form the competing business of Polar Pak were not themselves in violation of any duty owed to Ranch Hand under Kansas law. They contend no consideration should be given to preparations alone as a source for calculation of damages. This, too, is a subject to be addressed on remand when evidence of damages is offered. It appears, however, that any contention appellants' activities were only incipient and therefore inoffensive is negated by proof that the plans were implemented to respondent's damage. The chain of continuity was amply proven and it is immaterial whether the plans in the abstract were actionable as wrongs done against Ranch Hand.

**CROSS APPEAL BY RANCH HAND**

Appellants Lumianski and Jovanovic, as counterclaiming plaintiffs below, sought to recover from Ranch Hand bonus payments for the Ranch Hand fiscal year which ended June 28, 1980. The amounts of the bonuses were set by Lumianski's employment contract discussed earlier in this opinion and by a memorandum given Jovanovic setting in advance the formula for his participation. After the two were discharged from their employment because of the Polar Pak disclosure, Ranch Hand took the position that entitlement to the bonuses had been forfeited and Ranch Hand refused payment. The counterclaims sought payment of the bonuses and profit sharing benefits. The trial court here allowed the counterclaims for the bonuses and suggested that the parties settle the profit sharing dispute between themselves.[4] In their cross appeal, Ranch Hand contends the trial court erred in allowing recovery to Lumianski and Jovanovic for 1980 bonus payments. We agree.

Lumianski's rights and obligations were covered by his employment contract which set out not only the schedule upon which the bonus was to be computed, but the covenant restricting his post-employment activities. The latter contained the following sentence, "A breach of said covenant shall entitle employer to cancel any obligation it may otherwise have to pay any bonus due employee, not yet paid." Construction and application of this agreement is, as was explicated in a previous section of this opinion, to be according to Kansas law. In the case of *Sweet v. Stormont Vail Regional Medical Center*, 231 Kan. 604, 647 P.2d 1274 (1982), it was held that when an employee is made aware of company policy which is part of the employment contract, the employee will be bound by those terms. Lumianski was aware of the non-compete clause in the agreement he

**4.** The court expressed the opinion that profit sharing benefits were owed but it declined to rule the claim. The judgment is, in this respect, incomplete but no issue is made by any of the parties on this account. We elect to treat the claim as abandoned.

signed and he is bound by the penalty which breach of that agreement imposed.

 Regardless of the contract terms, however, both Lumianski and Jovanovic are held to have forfeited their entitlement to bonuses because of their breach of fiduciary duties as found in the liability phase of the case. The case of *Henderson v. Hassur*, 225 Kan. 678, 594 P.2d 650 (1979) is in point.[5] There, Henderson sued for sums due under an employment agreement and Hassur counterclaimed alleging fraud and breach of fiduciary duty. The court held that the latter incident of misconduct, even though associated with only one transaction, operated to preclude all rights of Henderson to compensation.

The trial court erred in awarding judgments to Lumianski and Jovanovic for recovery of bonus payments.

The judgment of August 12, 1983 is affirmed to the extent it finds issues of liability in favor of plaintiff Ranch Hand Foods, Inc. and against defendants Polar Pak Foods, Inc., James W. Hall, Jeremy P. Lumianski and Lazar B. Jovanovic. The judgment is reversed as to the awards of compensatory and punitive damages against said defendants and the cause is remanded for retrial on the issues of injunction and compensatory and punitive damages only. The judgment in favor of Jeremy P. Lumianski and Lazar B. Jovanovic and against Ranch Hand Foods, Inc. on the counterclaim is reversed.

---

5. Although the breach of fiduciary duty, as a tort claim, is evaluated according to Missouri law, the proposition of the entitlement by Lumianski and Jovanovic to recover bonuses is a contract issue governed by Kansas law. Restatement (Second) of *Conflict of Laws*, § 188 and 196.